**Robert L. PRITSKER, et al**
**v.**
**David BRUDNOY, et al.**

**No. 120068**

Superior Court ·
Commonwealth of Massachusetts

**July 14, 1981**

493

**Edwin A. McCabe**, counsel for plaintiff
**John Taylor Williams,** counsel for defendant

**RULINGS, MEMORANDUM OF DECISION AND ORDER ON THE PLAINTIFFS' AND DEFENDANTS' CROSS MOTIONS FOR SUMMARY**

## JUDGMENT

### INTRODUCTION AND BACKGROUND

In this action, the plaintiffs Robert and Karen Pritsker and Karenkir, Inc., claim that they were defamed and damaged by certain statements made by the defendant David Brudnoy during the broadcast of a radio program by the defendant WHDH Corporation.

The facts are essentially undisputed. Since 1974, the Pritskers have owned, managed and operated a gourmet French restaurant situated in Boston and called "dodin-bouffant."[1] Brudnoy is a well-known critic and radio program commentator and host. On September 10, 1976, a subject of discussion on Brudnoy's radio program "Nightline" was restaurants in the Boston area. During the course of the discussion, Brudnoy made the following remarks about the dodin-bouffant:

> And they have gotten better. They have gotten better and better. It's just that, in all fairness, I praise the book—the restaurant in my book. The manage—the people who own the place are unconscionably rude and vulgar people. And the attitude that they communicate is awful. But the food is fine. And it kills me to say this because I would like to be able to dump on their restaurant. I keep going there hoping it will decline, and it doesn't. The food is fine; the people who run it are pigs . . .

Immediately preceding that comment, Brudnoy and his guest had been discussing the tipping practices prevalent at some restaurants including the dodin-bouffant. Brudnoy had been criticizing the practice of adding the gratuity to the bill.[2]

The Pritskers have moved for partial summary judgment on the issue of liability claiming in their Amended Motion "that defendants defamed plaintiffs as a matter of law when they referred to plaintiffs as 'unconscionably rude and vulgar people' and 'pigs' on a widely broadcast radio program." In his motion for summary judgment Brudnoy sets out four reasons in support of his argument that the comments quoted above are not defamatory as a matter of law. First, Brudnoy claims that his statements are protected as pure opinion based upon disclosed facts or assumed facts; second, even if those statements were not pure opinion, the Pritskers have failed to demonstrate what defamatory falsehoods were implied or that Brudnoy acted with the requisite degree of fault; third, those statements were too amorphous to be actionable; fourth, those statements are protected by the common law privilege of "fair comment."

### RULINGS AND MEMORANDUM OF DECISION

As correctly pointed out by Brudnoy's counsel, cases in which summary judgment has been granted in a defamation action are quite rare. Conversely, because of the nature of such actions, quite often summary judgment is allowed in a defendant's favor. See, R. Sack, **Libel, Slander and Related Problems,** 535 N. 15 (1980).

Recent developments in the law of defamation have made it clear that, for purposes of constitutional analysis, there is a distinction between "pure opinion" and "mixed opinion." **Restatement** (second) **of Torts,** sec. 566 (1977). **Gertz v. Robert Welch, Inc.,** 418 U.S. 323, 339 (1974). "Pure opinion" is "when the maker of the comment states the facts

---

[1] The restaurant is owned by Karenkir, Inc. a Massachusetts corporation which is wholly owned by the Pritskers.

[2] A transcript of the entire relevant portion of the broadcast is attached to the Affidavit of Leslie Shubin as Exhibit A.

upon which he bases his opinion of the plaintiff and then expresses a comment as to the plaintiff's conduct, qualifications, or character," or when the facts, although undisclosed, are either known or assumed by both parties to the communication. In **Government Employees, Inc. v. Central Broadcasting Corp.,** Mass.Adv.Sh. (1979) 2485, this type of opinion was described as "opinion on disclosed or assumed facts." Pure opinion is wholly protected by the First Amendment. **Greenbelt Coop. Publishing Ass'n v. Bresler,** 398 U.S. 6, 14 (1970). **Central Broadcasting Corp., supra,** at 2492 and cases cited therein.[3]

The second kind of opinion, "mixed opinion," is one which is "apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication." **Restatement** (second), **supra** at sec. 566, comment b. This type of comment leads to the inference that there are undisclosed facts to justify the opinion. Mixed opinion is not afforded protection under the First Amendment and a defendant may be held liable for damages caused by such a comment where the requisite degree of harm is established.[4] The Supreme Judicial Court has confirmed and adopted the distinction between those two types of opinion in **National Ass'n of Gov't Employees, Inc. v. Central Broadcasting Corp.,** Mass.Adv.Sh. (1979) 2485, 2492.

The threshold issue in this action involves a determination of the nature of Brudnoy's comments.[5] If they are "pure opinion," they are afforded unqualified protection under the **Gertz** standard. Alternatively, if they are "mixed opinion," liability may be imposed and a further analysis as to the plaintiff's status and the applicable standards of fault would be warranted.

The allegedly defamatory comments which triggered this action are those which refer to the Pritskers as 'rude and vulgar" and "pigs." Brudnoy asserts two arguments in support of his claim that those words fall within the classification of "pure opinion." First, he argues that those words relate to the previously discussed tipping practices which Brudnoy had described and criticized. Secondly, Brudnoy claims that he had communicated to the listeners that his opinion was based on facts ascertained by a visit to the restaurant.

---

[3] Prior to **Gertz, supra,** 418 U.S. 323 (1974), which afforded constitutional protection to pure opinion, a common law privilege of "fair comment" was available to a defendant in a defamation action. The **Restatement of Torts,** % 606 (1938) defined the parameters of the privilege: Criticism of so much of another's activities as are matters of public concern is privileged if the criticism, although defamatory,
(a) is upon
    (i) is true or privileged statement of fact, or
    (ii) upon facts otherwise known or available to the recipient as a member of the public and
(b) represents the actual opinion of the critic and
(c) is not made solely for the purpose of causing harm to the other.
The privilege of fair comment extended only to expressions of pure opinion and was inapplicable to "mixed opinions." **Restatement** (second), **supra,** at % 566, comment b. The sections relating to the privilege are omitted from the **Restatement,** (second) since "a statement of opinion that does not imply a defamatory statement of fact is no longer actionable and no privilege is needed." **Id.** at % 606. The Reporter's Notes to the **Restatement** (second) indicate that there is a disagreement as to whether the privilege has a significance independent of the constitutional protection. See **Mashburn v. Collins,** 355 So. 2d 879, 889 (1977) (analysis employing both the "fair comment" and **Gertz** standards).

[4] The degree of harm necessary to impose liability on a media defendant would be determined by the status of the plaintiff as either a "public" or "private" individual. **Gertz, supra** at 352. See discussion, **infra.**

[5] Both parties agree that Brudnoy's comments fall within the general rubric of "opinion." A dispute arises with respect to the type of opinion.

After an examination of the entire portion of the transcript, I conclude that a reasonable listener would not relate the comments "rude," "vulgar" and "pigs" to the Pritskers' tipping practices. Heard in context, those comments reflect upon personal attributes of the Pritskers and not upon the previously discussed business practice. This conclusion is supported by an examination of Brudnoy's comments about the "attitude" created in the restaurant. When discussing the tipping practices Brudnoy opined: "The attitude stinks. And the reason the attitude stinks is that they tell you whether or not—they tell you that you are to tip by putting it into your bill."[6] Subsequently, when the discussion moved on to the quality of food at the dodin-bouffant Brudnoy commented: ". . . the people who own the place are unconscionably rude and vulgar people. **And** the attitude they communicate is awful," (emphasis added). It is reasonable to conclude that Brudnoy has buttressed his previously announced belief that the attitude "stinks" with an additional ground for disfavor, i.e., the owners are rude and vulgar. Since he did not disclose the facts upon which he based this comment, it is actionable as mixed opinion.[7]

Since a conclusion has been reached that Brudnoy's comments are actionable as mixed opinion, a determination must now be made as to the standard of fault to be applied in this action.[8] The Supreme Court in **New York Times Co. v. Sullivan,** 376 U.S. 254 (1964) imposed constitutional limitations on the power of state courts to award damages in defamation actions. In **New York Times,** the Court ruled that public officials cannot recover damages for defamatory statements concerning their official conduct unless there is proof that the purportedly defamatory comments were made with actual malice. **Id.** at 283. This rule was extended to encompass public figure plaintiffs in **Curtis Publishing Co.**

**v. Butts,** 388 U.S. 130, 155 (1967). A further extension of the doctrine occurred in **Rosenbloom v. Metromedia, Inc.,** 403 U.S. 29, 44 (1971) wherein the Court applied the stringent actual malice standard to the reporting of events of public or general concern. However, in **Gertz, supra,** the Court retreated from the **Rosenbloom** holding and held that the actual malice standard is to be afforded to defendants only in defamation actions brought by public officials or public figures. Additionally, the Court held that, so long as they do not impose liability without fault, the states may define their own standard of liability for a defendant in a suit brought by a private individual.[9]

The Massachusetts Supreme Judicial Court has determined that private persons may recover damages on proof of negligence in the publication of a defamatory falsehood. **Stone v. Essex County Newspapers, Inc.,** 367 Mass. 849, 858 (1975). Therefore, the standard of proof in Massachusetts differs according to the plaintiff's status as a public figure/public official or a private individual. Accordingly, this Court must

---

[6] Parenthetically, this is a clear example of opinion on disclosed facts.

[7] Brudnoy asserts that his comments were pure opinion since he indicated to listeners that parts of the opinion were based on his visits to the restaurant. This argument more readily supports the Pritsker's claim that Brudnoy's opinions infer the existence of undisclosed defamatory facts.

[8] There is no mention in Brudnoy's argument that the words "rude" and "vulgar" and "pigs" are too amorphous to be actionable or are simply permissible "verbal abuse." Taken in context, those terms could be taken to connote that the Pritskers' personalities were extremely unpleasant and that their conduct was socially offensive. Those words are clearly distinguishable from the "sloganeering invectiveness" of the public debate in **Central Broadcasting, supra,** at 2493.

[9] The third holding of the **Gertz** case, which is not relevant to the present litigation, is that the states may not permit recovery of punitive damages without a showing of actual malice.

determine whether the Pritskers are public figures who must prove actual malice by Brudnoy or they are private individuals who need only prove that Brudnoy's comments were negligently disseminated.[10]

Several cases provide guidance as to the factors to consider in determining whether a person is a "public figure." Of relevance to the analysis is whether the plaintiff has engaged in "purposeful activity amounting to a thrusting of his personality into the vortex of an important public controversy." **Gertz, supra** at 352. An additional consideration is whether the person "enjoys significantly greater access to the channels of effective communication." **Id.** at 344. **Stone, supra** at 859. Brudnoy argues that the Pritskers were public figures because the dodin-bouffant was open to the public, because the Pritskers advertised in various publications and because the restaurant's ambiance was the subject of controversy.

I conclude and rule that Brudnoy has not met his burden of proving that the Pritskers are public figures.[11] Supporting this ruling are the numerous cases which state that mere "newsworthiness" is insufficient to justify the application of the stringent **New York Times** standard. See, **Time, Inc. v. Firestone,** 424 U.S. 448 (1976) and **Wolston v. Reader's Digest Assoc.,** 443 U.S. 157, 167 (1979). The fact that the Pritskers were involved with the daily operation of their restaurant does not support the conclusion that they have thrust themselves into the "vortex of important public controversy" **Gertz** at 352. Nor do the Pritskers have that continuing access to media which makes public figures less vulnerable to injury from defamatory statements. Finally, it should be noted that at least one court has addressed the issue of whether a restaurateur is a public figure by the very fact that the restaurant "invites" the public to dine. **El Meson Espanol v.**

**N.Y.M. Corporation,** 389 F.Supp. 357 (S.D. N.Y. 1974), **aff'd on other grounds,** 521 F.2d 737 (2d. Cir. 1975). In **El Meson Espanol** the Court determined that operating a restaurant was an insufficient basis to warrant a conclusion that the plaintiff in that action was a public figure.[12]

**Id.** at 359.

Therefore, it is clear that the Pritskers, as private individuals, must prove that Brudnoy published the statement negligently. **Stone, supra** at 858. As a general rule, the issue of negligence is one of fact for the jury. **Zezuski v. Jenny Mfg. Co.,** 363 Mass. 324 (1973). **Williams v. Grealy,** 112 Mass. 79 (1873). Negligent conduct is that which creates an unreasonable risk of harm. **Restatement** (second), **supra,** sec. 283. In a defamation action several factors should be considered in determining whether a defendant acted as a reasonable, prudent person in publishing the communication: the check of accuracy, the time factor, the nature of the interests that the defendant was seeking to promote, and the extent of damage which would be produced if the communication proved false. **Id.,** sec. 580B, comment h. These factors must be weighed by the trier of fact. The Pritskers have not shown that what occurred here was negligence as a matter of law and

[10] Where, as here, the facts are undisputed, the determination of a plaintiff's status is a question of law. **Stone, supra** at 862.

[11] The case of **Bruno & Stillman, Inc. v. Globe Newspaper Co.,** 633 F.2d 583, 592 (1st Cir. 1980) confirms that the burden of proving that the plaintiff is not a private individual is on the defendant.

[12] Brudnoy's reliance on the case of **Mashburn v. Collins, supra,** is misplaced. In **Mashburn** the Court found that the statements made were pure opinion and therefore protected both constitutionally and by the doctrine of fair comment. The Court's analysis as to the restaurant's status was relative to the "fair comment" requirement that the issue be a matter of public concern where there is a finding that the statement is "pure opinion," and the issue of the plaintiff's status need not be reached.

their motion for summary judgment should be denied.

To summarize, this court has concluded that Brudnoy's statements were "mixed opinions" and are thus actionable. Since the Pritskers are private individuals, the standard of proof in this defamation action is one of negligence. The factors to be weighed in the determination of whether Brudnoy was negligent in publishing the statements are questions of fact for the jury.

### ORDERS

Accordingly, both motions for summary judgment are ORDERED denied.

**Paul G. Garrity**
**Justice of the Superior Court**

