**EL MESON ESPANOL, Plaintiff,**

v.

**NYM CORPORATION, Defendant.**

No. 74 Civ. 2982–CLB.

United States District Court,
S. D. New York.

Dec. 27, 1974.

---

5. E. g., Robb v. Finch, 311 F.Supp. 122 (W.D.Pa.1970).

Lawrence Lauer, New York City, for plaintiff.

Hall, McNicol, Marett & Hamilton, New York City, for defendant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Plaintiff, a New Jersey corporation, in 1973 operated a restaurant of the same name on Bergenline Avenue in Union City, New Jersey. Its stock is owned solely by Hector W. Maury and Maricela, his wife, recent emigres from Cuba,

Defendant, a New York corporation, is the proprietor of a magazine published in New York City and entitled "New York". In its November 5, 1973 issue, it printed a lengthy article entitled "COKE: The Big New Easy-Entry Business", which, as its title suggests, informed the readers about an important public issue: the increased illegal international smuggling of cocaine, and its distribution in the New York metropolitan area, as affected by the iron laws of classical economics.

In this diversity action, plaintiff seeks compensatory damages in the amount of $250,000.00, and a like sum as punitive damages, for defamation arising out of the coke article previously mentioned. No special damages are pleaded. Drug Research Corp. v. Curtis Publishing Co., 7 N.Y.2d 435, 441, 199 N.Y.S.2d 33, 37, 166 N.E.2d 319, 322 (1960). The entire article is before the Court, and counsel for both parties have briefed and relied on New York law. No New Jersey authorities have been cited to the Court.

Defendant now moves for summary judgment, pursuant to Rule 56, F.R.Civ. P.

The offending article describes in some detail locations and areas where an illegal narcotic may be purchased. After describing other locations, the author turned his attention to Union City:

"They [i. e. the cocaine dealers] are still out there across the Hudson River, too—in Elizabeth, in West New York, in Union City. Late at night in Union City, bars like *El Tropicano* at 49th Street and Hudson Avenue and restaurants like *El Meson Espanol* at 4018 Bergenline Avenue become good places to meet a connection. Park your car some night in front of one of them, turn off all the lights and focus your binoculars on a big Cadillac El Dorado with Miami plates, or, if you're lucky, a nice Lincoln with diplomatic plates. A great tourist attraction, that Union City."

A corporation may recover for its loss of business and credit caused by a libel. Steak Bit of Westbury Inc. v. Newsday, Inc., 70 Misc.2d 437, 334 N.Y. S.2d 325 (Sup.Nassau, 1972). The question remains whether the libel is actionable. At least prior to June 25, 1974, clearly it was not. All criteria mentioned as a basis for authors' and publishers' immunity on First Amendment grounds, in Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed. 2d 296 (1971) and Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) were present in this case. A restaurant which serves food to the general public has been held to be involved in an enterprise of public interest. Twenty-Five East 40th St. Restaurant Corp. v. Forbes, Inc., 37 A. 2d 546, 322 N.Y.S.2d 408; Steak Bit of Westbury, *supra*.

A lawyer reading defendant's galleys for libel, with one eye watching the clock for press time would have had no difficulty in passing the article as privileged in the absence of actual malice under *Rosenbloom*. Hewever, on June 25, 1974, the Supreme Court, sacrificing predictability on the alter of perfection, modified the Rosenbloom rule and enacted, in Gertz v. Welch, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789, a subtle difference between a "private" person defamed, and a "public figure." In so

doing, it decided that a well known lawyer who had injected himself into the fray by accepting a retainer to sue a Chicago policeman for a client in a civil case involving a matter of great public and political interest [murder of a civilian by the policeman], a lawyer who had held unpaid public office in the past, and had once been a member of an activist lawyers group, was not a public figure. If he is not, then *a fortiori*, a corporation operating a place of public accommodation (a bar and grill) and holding itself out to the public as operating a safe and proper place to go, is not a public figure.

■ While we regard the attempted distinction as a dangerous and unworkable step backward, we are nonetheless bound by it, and must conclude that except to the extent punitive damages are sought, there is now no obstacle under federal law to the maintenance of these actions by other than "public figures" or officials.

The rule, as stated in *Gertz*, is as follows: (p. 347 of 418 U.S., p. 3010 of 94 S.Ct., p. 809 of 41 L.Ed.2d)

"We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual."

■ We turn now to state law. Almost ninety years ago in a case almost identical on its facts, the complaint was dismissed without a trial. In Kennedy v. Press Publishing Co., 41 Hun 422, 3 St.R. 139 (1886) a Coney Island saloon keeper sought damages for libel. The Court held:

"Taking the article in the strongest sense which it would bear, with the aid of proper innuendoes, it is a charge that the saloons of which it speaks are the resort of improper characters, and

that the influence of associations had there are bad. It may be also assumed that it charges that the plaintiff's saloon is one of this character. Granting all this, we think the libel is on the place and not on the person. There is nothing in the article charging that the plaintiff conducts his saloon improperly, or that he is responsible for the character of the guests."

The principle of *Kennedy* has survived in the New York courts. In Dauer & Fittipaldi, Inc. v. Twenty-First Century, 43 A.D.2d 178, 349 N.Y.S.2d 736 (1st Dept. 1973) a libel complaint by a restauranteur was dismissed in reliance on *Kennedy*. The *Court held* (McGivern, J.):

"At best, the position of plaintiff is *damnum absque injuria*. It may have been the butt of amusement, it may even have acquired an evanescent notoriety, but by no reasonable construction can the article reach actionable libel. And since the plaintiff's owner was not defamed, even if it thinks its pub was sullied, no action lies unless it alleges and proves special damages as a necessary and natural consequence of the publication. Kennedy v. Press Publishing Co., 41 Hun 422; Falcaro v. Teenetta, Inc., 19 A.D.2d 824, 243 N.Y.S.2d 1012; Stillman v. Paramount Pictures Corp., 2 A.D.2d 18, 20, 153 N.Y.S.2d 190, 191, aff'd, 5 N.Y.2d 994, 184 N.Y.S.2d 856 [157 N.E.2d 728]. It is even difficult to appreciate how the corporate sensibilities of the plaintiff have been wounded. Saloons have traditionally not been the habitats of Nobel prize winners, or even Rhodes scholars."

There is no genuine issue of fact. In reliance on the New York doctrine set forth in the *Kennedy* case and its progeny, the motion is granted and the complaint dismissed.

So ordered.