57 P.3d 82 (2002)
David PEGASUS and Beverly Pegasus, Individuals, D/B/A Salsa Dave's, Appellants,
v.
RENO NEWSPAPERS, INC., D/B/A Reno Gazette-Journal, Respondent.
No. 37291.
Supreme Court of Nevada.
November 7, 2002.
*84 Law Office of Mark Wray, Reno, for Appellants.
Burton, Bartlett & Glogovac, Reno, for Respondent.
BEFORE SHEARING, ROSE and BECKER, JJ.

OPINION
BECKER, J.
Appellants, David and Beverly Pegasus, owned and operated Salsa Dave's, a Mexican-American eatery in Sparks, Nevada. Stacy Ferrante, a freelance journalist, wrote a negative review of Salsa Dave's, which was published in the Reno Gazette-Journal (RGJ). The review contained allegedly false factual allegations. The Pegasuses filed a complaint against the RGJ, asserting that Ferrante's review constituted defamation.
*85 Following depositions, the RGJ moved for summary judgment. The district court granted the RGJ's motion, concluding that the review contained only a statement of opinion and was not actionable. In addition, the district court found that Salsa Dave's was a public figure for the limited purpose of a food review. Thus, the district court concluded that the Pegasuses had the burden of proving actual malice and that no facts existed to suggest actual malice on the part of the RGJ.
For the reasons set forth below, we conclude that the allegedly false statements were expressions of opinion. We further conclude that restaurant owners, operating a place of public accommodation, have injected themselves into the public arena for purposes of a food review. They are therefore limited-purpose public figures and, when defamation is alleged, must overcome the heightened actual malice standard of the First Amendment. We affirm the order of the district court.

FACTS
In September 1998 and April 1999, the RGJ published favorable restaurant reviews of Salsa Dave's. Thereafter, Ted Thomaidis, editor for the RGJ food section, wrote reviews or articles generally criticizing the use of canned beans or packaged ingredients in many Mexican-American restaurants. Thomaidis gave tips on identifying an authentic Mexican restaurant.
Subsequent to Thomaidis' articles, the RGJ published a third food review of Salsa Dave's. Stacey Ferrante authored the third review. Thomaidis was Ferrante's direct supervisor. The Ferrante review criticized the freshness of Salsa Dave's food and indicated that Ferrante saw a can of processed pinto beans in the kitchen while paying for her meal.
The Pegasuses wrote a letter to the RGJ in response to the review, requesting a retraction and publication of their letter. Included with the letter, they enclosed copies of invoices demonstrating that they purchased dry rather than canned pinto beans. The cover letter sought a conspicuous, appropriate correction in a timely manner. Jim Sloan, assistant managing editor of the RGJ, sent a letter to the Pegasuses indicating that, after careful consideration, the RGJ would not print a correction but would print the Pegasuses' letter to the editor. The letter to the editor was subsequently published.
On November 30, 1999, the Pegasuses filed a complaint against the RGJ, asserting that Ferrante's review contained the following defamatory statements:
1. I scooped out guacamole with my fork and dug in. One taste told me what I had feared: this pale green stuff was definitely not the real deal.
2. At this point my spouse pointed out what I was beginning to realize: "All this came out of some sort of package."
3. The cost cutting measure applied to the ornamentation had spilled into the kitchen. The can of name-brand beans we spy while paying our check confirms this.
The Pegasuses asserted that these are defamatory false factual statements and not protected opinion.
In its answer, the RGJ denied the Pegasuses' claims and asserted that the statements made by Ferrante were true and included matters of opinion that were privileged or were fair comment on matters of public interest. Further, the RGJ asserted that the Pegasuses were public figures for purposes of the food review and therefore subject to an actual malice standard.
During discovery, testimony was presented concerning the use of packaged ingredients in Salsa Dave's food. Beverly Pegasus stated that, at the time the Ferrante review was written, the Pegasuses had one can of beans on the premises. Beverly also asserted that canned beans were only available for emergency use.
David Pegasus stated that he used some pre-packaged foods, including frozen avocado pulp, during periods when avocado was out of season, and that he kept several cans of commercially prepared pinto beans on the premises, but that the beans were not visible from the cashier booth. David asserted that it was not possible that Ferrante had canned beans in her lunch because he only kept the *86 beans on the premises for emergency purposes; specifically, if he ran out late in the evening as a result of high dinner traffic. He also stated that he purchased four or five cans of beans for such purposes and that the can(s) were kept on a bottom shelf not visible from the customer service area. Finally, David stated that he might have been using frozen avocado pulp in his guacamole when Ferrante visited his restaurant.
Ferrante stated that she saw a can of canned beans in the kitchen through a louvered door while she was paying for her food. Ferrante stated that her husband, who had lunched with her, saw the can of beans first and then pointed it out to her.
Thomaidis stated that he verified with Ferrante every statement in her review, particularly regarding her witnessing the can of beans on Salsa Dave's premises, and that he had no reason to doubt Ferrante's statement. He indicated he knew Ferrante and believed her to be an honest individual with no reason to fabricate a negative review of Salsa Dave's. He believed, based upon his past association with Ferrante, that her review was an honest expression of her opinion regarding Salsa Dave's food.
The Pegasuses presented no evidence that Ferrante, Thomaidis or anyone associated or employed with RGJ had bad feelings or a prior dispute with the Pegasuses or Salsa Dave's.

Relevant procedural history
Following depositions, the RGJ filed a motion for summary judgment. The RGJ asserted that the review regarding Salsa Dave's restaurant was only partially critical. The RGJ asserted that only two statements served as the basis for the lawsuit: (1) "All of this came out of some sort of package"; and (2) "The cost cutting measure applied to the ornamentation had spilled into the kitchen. The can of name-brand beans we spy while paying our check confirms this."
In its defense, the RGJ first asserted that the review, when taken as a whole, was an expression of Ferrante's opinion that the food tasted like it was pre-cooked or packaged. The RGJ argued that the statements, taken in context, were akin to hyperbole that could not have reasonably been interpreted by the reader as a statement of fact. As such, the RGJ asserted the review was absolutely protected speech under the First Amendment.
In addition, the RGJ contended that even if the statements could be considered as expressions of fact, the Pegasuses had failed to establish a prima facie case of defamation because they could not prove that the RGJ had acted with actual malice, or that the allegedly defamatory statements made by the RGJ were false. The RGJ asserted that Salsa Dave's was a public figure for the limited purpose of a food review and that, therefore, an actual malice standard applied.
In their opposition, the Pegasuses stipulated that only these two statements were at issue. However, they asserted the statements were facts, not opinion. They also contested that they were public figures and that an actual malice standard applied to their claims. Finally, they argued that even if actual malice applies, they set forth sufficient facts to support a prima facie case of actual malice.
Relying on Nevada Independent Broadcasting v. Allen,[1] the Pegasuses claimed that they had sufficient evidence that the RGJ had acted with reckless disregard, including: (1) it published Ferrante's statement without attempting to verify the presence of canned beans with the Pegasuses; (2) Ferrante did not actually observe canned beans or other packaged ingredients being used in the preparation of her food; (3) Ferrante could not state for certain what brand of canned beans she saw on the premises; (4) Thomaidis asked Ferrante if she was sure beyond a reasonable doubt that she had seen the canned beans; (5) Ferrante did not make a second visit to Salsa Dave's as was Thomaidis' habit when he wrote a negative review; (6) Ferrante spent only an hour at Salsa Dave's; and (7) Salsa Dave's had received a *87 positive review in the RGJ a month before Ferrante's visit.
In its reply, the RGJ contended that Salsa Dave's was a public figure for the limited purpose of a food review because it actively advertised and sought commercial patronage. The RGJ asserted that the facts set forth in the opposition did not, as a matter of law, support a finding of actual malice and, therefore, summary judgment was appropriate.
The district court granted summary judgment in favor of the RGJ. The district court concluded that the statements were not factual assertions when made in the context of a restaurant review and constituted protected opinion. The district court also concluded that Salsa Dave's was a public figure for the limited purpose of a food review and that the Pegasuses therefore had the burden of proving that the RGJ acted with actual malice. The district court then determined that there were no facts demonstrating by clear and convincing evidence that the RGJ acted with actual malice.

DISCUSSION
This appeal presents two issues of first impression in Nevada. First, whether all comments published in a food review are constitutionally protected statements of opinion. Second, what constitutes a "public figure" for purposes of a defamation action?

I. Standard of review

This court's review of an order granting summary judgment is de novo.[2] Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits on file show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[3] "A genuine issue of material fact is one where the evidence is such that a reasonable jury could return a verdict for the non-moving party."[4]
When a motion for summary judgment is made and supported as required by NRCP 56, the non-moving party may not rest upon general allegations and conclusions, but must, by affidavit or otherwise, set forth specific facts demonstrating the existence of a genuine factual issue.[5] "The non-moving party's documentation must be admissible evidence," as "he or she `is not entitled to build a case on the gossamer threads of whimsy, speculation and conjecture.'"[6] However, all of the non-movant's statements must be accepted as true, all reasonable inferences that can be drawn from the evidence must be admitted, and neither the trial court nor this court may decide issues of credibility based upon the evidence submitted in the motion or the opposition.[7]

II. Restaurant reviews

Defamation is a publication of a false statement of fact.[8] Statements of opinion cannot be defamatory because "there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."[9] This court has held that "statements of opinion as opposed to statements of fact are not actionable."[10] A review, by its very nature, constitutes the opinion *88 of the reviewer.[11] Thus, the RGJ argues that even if an incorrect statement of fact is contained in a restaurant review, because it is a review and, as a whole, expresses an opinion, a misstatement of fact in the review cannot be actionable. We disagree.
We have previously stated that whether a statement is conditionally privileged is a question of law for the court[12] and should be reviewed de novo.[13] It is true that the term "review" conveys to the reader that the statement is an expression of opinion and generally, only assertions of fact, not opinion, can be defamatory.[14] "However, expressions of opinion may suggest that the speaker knows certain facts to be true or may imply that facts exist which will be sufficient to render the message defamatory if false."[15] We see no reason why this same rule should not apply to statements in restaurant reviews. We agree, however, with the RGJ that statements made in a restaurant review should not be taken out of context. Rather, the review as a whole, and its essential nature as an expression of opinion, should be considered in weighing any allegation of defamatory import.
This court has held that a statement is not defamatory if it is an exaggeration or generalization that could be interpreted by a reasonable person as "mere rhetorical hyperbole."[16] Nor is a statement defamatory if it is absolutely true, or substantially true.[17] A statement is, however, defamatory if it "would tend to lower the subject in the estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt."[18]
In determining whether a statement is actionable for the purposes of a defamation suit, the court must ask "whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact."[19] If the published statements could be construed as defamatory statements of fact, and therefore actionable, then the jury should resolve the matter.[20] However, this court has also stated that comments must be considered in context.[21]
Here, the packaged goods and canned bean statements were a small portion of a lengthy review. The full text of the review is as follows:

*89 Located on the corner of Pyramid and McCarran and sharing a strip mall with a huge Raley's, Salsa Dave's neon sign is clearly visible from the street. I had seen it driving by a few times and my curiosity finally got the better of me. Upon my arrival, the owner, Dave Pegasus, greets me.
"Welcome to Salsa Dave's. I'm Dave, and there is the salsa," he says, indicating the salsa bar at the center of the room. I bet you say that to all the girls.
We are seated at the corner table by the window where we have a great view of the elaborate design. Where many Mexican restaurants fall into the category of Spartan decoration, this is the exception. A lovely painting by Dave's wife Beverly covers the wall I am sitting next to. Ornate hand painted vases adorn shelves. A female customer at the next table asks about the vases, apparently being a collector who knows their worth. To my eavesdropping delight, Dave tells her about his relative who does business in Mexico and traded them for the price of a few inexpensive appliances.
With all this attention paid to the décor, and the owner's obvious love of Mexico, I am looking forward to the food. My spouse orders the Cancun burrito with beef ($5.95) and I select the taco salad ($5.95). A basket of chips, warm and thin and crisp, arrives at our table. I take a trip to the salsa bar to sample the wares. There are four kinds, ranging from mild to hot, including a salsa verde made with tomatillos. Juggling them back to the table in little cups, I start to forget which is which. Unfortunately, the three red salsas are almost identical in color and texture. It would have been great if some were chunkier than others. Although the verde was classified as medium, I experienced it as hotter than the hot salsa, but that may have been due to its more distinct flavor.
Then the most puzzling thing happens. When our food arrives, it does not live up to the colorful mural I have my back against.
My husband's white burrito arrives overrun with olives, which he silently begins to herd to the side. They bump into the diminutive portion cups of sour cream and guacamole, which are leveled off sharply at the top.
The taco salad comes in a tostada shell, and the salsa salad dressing wins points. I scooped out the guacamole with my fork and dug in. One taste told me what I had feared: This pale green stuff was definitely not the real deal.
At this point my spouse pointed out what I was beginning to realize: "All of this came out of some sort of package."
Recalling now the charming story of where those vases came from, I glanced at them. The cost cutting measure applied to the ornamentation had spilled into the kitchen. The can of name-brand beans we spy while paying our check confirms this. I'll say this for the benefit of all concerned; I'll pay a bit more if you live up to the potential of your vision.
We conclude that the district court did not err in finding the statement that the food came from a package, taken in context together with the tenor of the entire work, is an expression of opinion. A reasonable person reading the review would understand that Ferrante's opinion about the freshness of the ingredients was based on her consumption of the food. It conveyed Ferrante's opinion that the food was pre-packed rather than an implied statement that she had observed the food coming from a package. Therefore, we conclude that the statement, "[a]ll of this came out of some sort of package," is not actionable.
The statement regarding canned beans presents a closer issue. Ferrante does not state that canned beans are used in the preparation of Salsa Dave's food, merely that the existence of the can of beans confirms her earlier opinion that the food is pre-packaged. However, it arguably also suggests that Ferrante knows, rather than opines, that Salsa Dave's generally uses canned beans in the preparation of its food. While Salsa Dave's disputes that Ferrante could actually see a can of beans, they do keep canned beans on the premises. Therefore, the statement is substantially true.
*90 The district court considered this, together with the entirety of the article, in finding that the statement was purely opinion. We agree. When read in the context of the entire review, a reasonable person would understand the statement to be an expression of Ferrante's belief that canned beans had been used in the preparation of the food, rather than a statement of fact. The only statement of fact that might have defamatory import is that there are canned beans on the premises, which implies canned beans are used in some fashion in the preparation of the food. Since, even if factual, this is a true statement, and the rest of the article is a statement of opinion, we conclude that the district court did not err in finding the statements to be non-actionable.
It is these factors that distinguish this case from our holdings in Lubin v. Kunin[22] and Wynn v. Smith.[23] Neither Lubin nor Wynn involved alleged defamatory statements in the context of a review. The contested statements in those cases were capable of defamatory import far more egregious in nature than the presence of canned beans in a restaurant kitchen. Lubin involved accusations of child abuse while Wynn involved allegations that an individual was a front for organized crime. Moreover, both cases involve the character of individuals, not a comment on the quality of the goods or services of a commercial establishment. Finally, the true facts in those cases were substantially different from the defamatory inferences created by misleading or confusing text. Here, even assuming Ferrante did not see the can of beans, the true facts that canned beans are kept in the kitchen are essentially identical with the allegedly false statement that Ferrante saw a can of beans in the kitchen. Accordingly, the district court did not err in granting summary judgment as a matter of law.

III. Defamationpublic v. private figures

The general elements of a defamation claim require a plaintiff to prove: "(1) a false and defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages."[24]
With the adoption of the First Amendment's free speech provisions to the United States Constitution, the United States Supreme Court was forced to determine how the First Amendment interacted with the common law of defamation. Initially, the High Court suggested that the First Amendment did not protect against false statements and was not implicated in a defamation action.[25] However, in the landmark case of New York Times Company v. Sullivan,[26] the Supreme Court concluded that the negligence standard was too broad when applied to defendants who were commenting about the actions of a public official. To promote free criticism of public officials, and avoid any chilling effect from the threat of a defamation action, the High Court concluded that a defendant could not be held liable for damages in a defamation action involving a public official plaintiff unless "actual malice" is alleged and proven by clear and convincing evidence.[27] Actual malice has been defined as "knowledge that it [the statement] was false or with reckless disregard of whether it was false or not."[28] Reckless disregard means that the publisher of the statement acted with a " `high degree of awareness of *91 ... [the] probable falsity' " of the statement or had serious doubts as to the publication's truth.[29]
After New York Times, the Supreme Court extended heightened First Amendment protection to individuals who were not public officials, but who were involved in issues of public concern. These persons were designated as "public figures" by the High Court.[30] The Supreme Court further addressed the issue of public figures in Rosenbloom v. Metromedia.[31] In a plurality opinion, the Rosenbloom Court suggested that public figure status applies to any individual involved in a matter of general or public interest.[32] Three years later, the Court retreated from the broad definition of a public figure espoused in Rosenbloom.
In Gertz v. Robert Welch, Inc.,[33] the United States Supreme Court clarified the definition of a public figure. The Gertz Court reiterated that the New York Times standard applies only to public officials and public figure plaintiffs, not to private plaintiffs, and that states may define for themselves the appropriate standard of liability when a publisher or broadcaster makes a defamatory statement that injures a private individual.[34] The Gertz Court created two categories of public figures. General public figures are those individuals who "achieve such pervasive fame or notoriety that [they] become[ ] a public figure for all purposes and in all contexts."[35] Limited public figures are individuals who have only achieved fame or notoriety based on their role in a particular public issue.[36]
A limited-purpose public figure is a person who voluntarily injects himself or is thrust into a particular public controversy or public concern, and thereby becomes a public figure for a limited range of issues.[37] The test for determining whether someone is a limited public figure includes examining whether a person's role in a matter of public concern is voluntary and prominent.[38] Specifically, the Gertz Court stated:
We would not lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes. Absent clear evidence of general fame and notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life. It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation.[39]
We adopt the Gertz test for determining whether a person is a general-purpose or a limited-purpose public figure. Based on the language contained in Rosenbloom and Gertz, state courts have considered whether a restaurant is a public figure for the limited purpose of reporting on the quality or condition of the restaurant's services. For example, in Journal-Gazette Co. v. Bandido's, *92 Inc.,[40] a Mexican-American restaurant brought a defamation suit against a local newspaper after it published a story entitled "Health board shuts doors of Bandido's Inspectors find rats, roaches at local eatery."[41] The Indiana Supreme Court, pursuant to Gertz, adopted the actual malice standard and concluded that Bandido's was a limited-purpose public figure:
Restaurants and other establishments that actively advertise and seek commercial patronage have been routinely held to be public figures, at least for the limited purpose of consumer reporting on their goods and services. Hence, while Bandido's may not necessarily have been a public figure before the health department closed the restaurant, we find that it certainly became a public figure for the limited purpose of issues concerning the health department's report and the circumstances giving rise to the closing of the restaurant.[42]
Several other jurisdictions have adopted the same rationale in regard to restaurants and restaurant reviews.[43] These courts have indicated that because a restaurant is a place of public accommodation that seeks public patrons, it is a public figure for the limited purpose of a food review or reporting on its goods and services. We agree with our sister states' rationale that a place of public accommodation has voluntarily injected itself into the public concern for the limited purpose of reporting on its goods and services. Here, Salsa Dave's is a limited-purpose public figure because it has voluntarily entered the public spectrum by providing public accommodation and seeking public patrons. Thus, it is a limited public figure for the purpose of a food review. Therefore, we conclude that Salsa Dave's had the burden of proving that the RGJ acted with actual malice when it printed the Ferrante review in order to sustain an action for defamation against the RGJ.

IV. Actual malice

Having concluded that Salsa Dave's is a limited public figure, we turn to the district court's finding that Salsa Dave's failed to present evidence of actual malice. The question of actual malice goes to the jury only if there is sufficient evidence for the jury, by clear and convincing evidence, to reasonably infer that the publication was made with actual malice.[44] As noted above, actual malice is proven when a statement is published with knowledge that it was false or with reckless disregard for its veracity.[45] Reckless disregard for the truth may be found when the "defendant entertained serious doubts as to the truth of the statement, but published it anyway."[46] This test is a subjective one, relying as it does on "what the defendant believed and intended to convey, and not what a reasonable person would have understood the message to be."[47] *93 Recklessness or actual malice may be established through cumulative evidence of negligence, motive, and intent.[48]
In the present case, the Pegasuses assert that they had cumulative evidence demonstrating actual malice. We disagree. The Pegasuses' evidence at most suggests a lack of concern on the part of the RGJ over the effect the review might have on Salsa Dave's. The issue is what the RGJ believed and intended to convey at the time it published the review.[49] Here, there is no indication that the RGJ published the Ferrante review with the knowledge that it was false or that it entertained serious doubts about the veracity of the statements contained in Ferrante's review.[50]
Even assuming there is sufficient evidence to argue that Ferrante's statement regarding the can of beans was false, there is no evidence that Thomaidis, or anyone else at the RGJ, had any reason to believe Ferrante would lie in her review. Thomaidis indicated that he asked Ferrante about the beans only because he wanted to be sure she personally saw the beans and was not relying upon what someone else may have told her, not because he doubted her veracity. Moreover, the fact that a different reviewer gave Salsa Dave's a positive rating does not establish that the RGJ should have known that Ferrante's review was anything other than an honest difference of opinion. Thus, the Pegasuses provided no evidence suggesting that the RGJ acted with actual malice or reckless disregard for the truth at the time it published the review of Salsa Dave's.[51]
The Pegasuses rely heavily on the fact that Thomaidis' previous articles had demonstrated a dislike for canned or pre-packaged ingredients in Mexican-American restaurants and that the use of such items meant the food was not authentic Mexican cuisine. The Pegasuses also argue that Thomaidis should have conducted an investigation and insisted on a second visit to the restaurant before publishing a negative review. None of these things establish actual malice.
Thomaidis' opinions about authentic Mexican food do not demonstrate that he had any dispute with Salsa Dave's prior to the review. There is no evidence that he had animosity towards Salsa Dave's and targeted it over any other Mexican-American restaurant. At most, the evidence demonstrates Thomaidis was interested in reviewing restaurants that served Mexican food and determining if they were "authentic" using his criteria.
The same is true of the allegations that Thomaidis should have done more investigation. Indeed, failure to investigate alone, or to read other previously printed material is not grounds for a finding of actual malice.[52] Given the clear and convincing standard, the record demonstrates there is insufficient evidence to support a finding that Thomaidis or anyone else at the RGJ entertained a serious doubt as to the truth of Ferrante's observations or the honesty of her opinion. The district court did not err in concluding that the Pegasuses' evidence, viewed in the light most favorable to the Pegasuses, was insufficient as a matter of law to support a claim for defamation.

CONCLUSION
We conclude that comment in a restaurant review is not automatically protected opinion simply because it is contained in a review. However, such comments must be viewed in the context of the review as a whole and not as an individual statement. When a reasonable person, reading a restaurant review, *94 would recognize that the comments contained therein are the opinions of the writer and not blanket statements of fact, the comments are privileged. Moreover, for the purpose of a review, restaurants are limited-purpose public figures.
Accordingly, the order of the district court granting summary judgment is affirmed.
SHEARING, J., concurs.
ROSE, J., concurring in part and dissenting in part.
I agree with the majority opinion when it states the law defining a limited public figure and the general legal discussion of what constitutes a fact or an opinion. I disagree, however, in the majority's application of these principles to the facts of this case. For this reason, I concur in part and dissent in part.
Ms. Ferrante, a Reno Gazette-Journal reporter, asserted her strong opinion that Salsa Dave's Mexican food "was definitely not the real deal" and that one entrée tasted as if it "came out of some sort of package." These opinions are legally fair enough. However, the reporter went further and stated that she saw a can of name brand beans in the kitchen. This is not an opinion, but a cold hard fact that gives credibility to the harsh opinions stated.
Salsa Dave's denied that they used canned beans that day and emphatically stated that there was no can of beans in sight in the kitchen. The fact that Pegasus admitted to having cans of beans in a cupboard on the premises for emergencies does not change the fact that the reporter said she saw the can, and that Salsa Dave's adamantly denied that fact.
This creates a factual issue that should be left to a jury, and I would remand this case so that factual determinations can be made concerning the can of beans allegedly seen in the kitchen. If it were shown that the reporter was lying, a sufficient basis for malice or a reckless disregard for the truth would be shown when coupled with such facts as the Reno Gazette-Journal not having visited the restaurant a second time before writing the negative review, as was its usual practice.
NOTES
[1] 99 Nev. 404, 415, 664 P.2d 337, 344-45 (1983) ("Evidence of negligence, motive, and intent may be used, cumulatively, to establish the necessary recklessness. It is clear that in most instances one factor alone will not establish actual malice by convincing clarity." (citation omitted)).
[2] Tore, Ltd. v. Church, 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989).
[3] NRCP 56; see also Great American Ins. v. General Builders, 113 Nev. 346, 350-51, 934 P.2d 257, 260 (1997).
[4] Posadas v. City of Reno, 109 Nev. 448, 452, 851 P.2d 438, 441-42 (1993).
[5] NRCP 56(e); see also Bird v. Casa Royale West, 97 Nev. 67, 70, 624 P.2d 17, 19 (1981).
[6] Posadas, 109 Nev. at 452, 851 P.2d at 442 (quoting Collins v. Union Fed. Savings & Loan, 99 Nev. 284, 302, 662 P.2d 610, 621 (1983)).
[7] Great American Ins., 113 Nev. at 351, 934 P.2d at 260.
[8] Posadas, 109 Nev. at 453, 851 P.2d at 442.
[9] Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).
[10] Nevada Ind. Broadcasting, 99 Nev. at 410, 664 P.2d at 341.
[11] Greer v. Columbus Monthly Pub. Corp., 4 Ohio App.3d 235, 448 N.E.2d 157, 161 (1982).
[12] Circus Circus Hotels v. Witherspoon, 99 Nev. 56, 62, 657 P.2d 101, 105 (1983).
[13] See SIIS v. United Exposition Services Co., 109 Nev. 28, 30, 846 P.2d 294, 295 (1993) ("Questions of law are reviewed de novo.").
[14] K-Mart Corporation v. Washington, 109 Nev. 1180, 1192, 866 P.2d 274, 282 (1993).
[15] Id. (citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 21-22, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)).
[16] Wellman v. Fox, 108 Nev. 83, 88, 825 P.2d 208, 211 (1992).
[17] See Mark v. Seattle Times, 96 Wash.2d 473, 635 P.2d 1081, 1092 (1981). The doctrine of substantial truth provides that minor inaccuracies do not amount to falsity unless the inaccuracies "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." Specifically, the court must determine whether the gist of the story, or the portion of the story that carries the "sting" of the article, is true. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 517, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (internal quotes and citation omitted).
[18] K-Mart Corporation, 109 Nev. at 1191, 866 P.2d at 281-82.
[19] Nevada Ind. Broadcasting, 99 Nev. at 410, 664 P.2d at 342. Additionally, a federal district court, applying Nevada law, enunciated three factors for determining whether an alleged defamatory statement includes a factual assertion: (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible to being proved true or false. Flowers v. Carville, 112 F.Supp.2d 1202, 1211 (D.Nev.2000).
[20] Posadas, 109 Nev. at 453 n. 2, 851 P.2d at 442 n. 2 (citing Milkovich, 497 U.S. at 21-22, 110 S.Ct. 2695).
[21] Nevada Ind. Broadcasting, 99 Nev. at 412, 664 P.2d at 343 (quoting Cianci v. New Times Publishing Co., 639 F.2d 54, 67 (2d Cir.1980)).
[22] 117 Nev. 107, 17 P.3d 422 (2001).
[23] 117 Nev. 6, 16 P.3d 424 (2001).
[24] See Chowdhry v. NLVH, Inc., 109 Nev. 478, 483, 851 P.2d 459, 462 (1993).
[25] Konigsberg v. State Bar, 366 U.S. 36, 49 & n. 10, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961); Times Film Corp. v. Chicago, 365 U.S. 43, 48, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961); Roth v. United States, 354 U.S. 476, 486-87, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Beauharnais v. Illinois, 343 U.S. 250, 266, 72 S.Ct. 725, 96 L.Ed. 919 (1952); Pennekamp v. Florida, 328 U.S. 331, 348-49, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946); Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); Near v. Minnesota, 283 U.S. 697, 715, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).
[26] 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).
[27] Id. at 279-80, 84 S.Ct. 710.
[28] Id. at 280, 84 S.Ct. 710.
[29] St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968) (quoting Garrison v. Louisiana, 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)).
[30] Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (noting that a head coach of a state university was a public figure for purposes of reporting on game fixing).
[31] 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971).
[32] Id. at 43, 91 S.Ct. 1811 (plurality opinion).
[33] 418 U.S. 323, 342-43, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).
[34] Id. at 343-47, 94 S.Ct. 2997.
[35] Id. at 351, 94 S.Ct. 2997.
[36] Id. at 351-52, 94 S.Ct. 2997.
[37] Id. at 351, 94 S.Ct. 2997.
[38] Id. at 351-52, 94 S.Ct. 2997; see also Curtis Publishing, 388 U.S. at 154-55, 87 S.Ct. 1975 (plurality opinion); id. at 164, 87 S.Ct. 1975 (Warren, C.J., concurring in result).
[39] Gertz, 418 U.S. at 352, 94 S.Ct. 2997; see also Tavoulareas v. Piro, 817 F.2d 762, 772 (D.C.Cir. 1987) (concluding that a general-purpose public figure is strictly construed as someone who is a household name in the community like a movie celebrity or an athlete).
[40] 712 N.E.2d 446 (Ind.1999).
[41] Id. at 449-50.
[42] Id. at 454 (citations omitted).
[43] See, e.g., Greer, 448 N.E.2d at 162; Steak Bit of Westbury, Inc. v. Newsday, Inc., 70 Misc.2d 437, 334 N.Y.S.2d 325, 330 (Sup.Ct.1972); Twenty-Five E. 40th St. Rest. Corp. v. Forbes, Inc., 37 A.D.2d 546, 322 N.Y.S.2d 408, 409 (1971). These cases affirmatively establish that a private figure must prove actual malice when the subject matter of the speech is an issue of public concern. See also Rodney A. Smolla, Law of Defamation § 3.11 (1989); see generally El Meson Espanol v. NYM Corporation, 389 F.Supp. 357, 358 (S.D.N.Y.1974) (concluding that a restaurant which serves food to the general public is engaged in an enterprise of public interest); Mashburn v. Collin, 355 So.2d 879, 889-90 (La.1977) (concluding that a restaurant review was an expression of opinion and was privileged unless published with knowing or reckless falsity); Havalunch, Inc. v. Mazza, 170 W.Va. 268, 294 S.E.2d 70, 74-75 (1981) (concluding that a humorous restaurant review was protected by the doctrine of fair comment); John C. Williams, Annotation, Liability for Defamation for Criticizing Restaurant's Food, 96 A.L.R.3d 609 (1980 & Supp.2001).
[44] Nevada Ind. Broadcasting, 99 Nev. at 414, 664 P.2d at 344.
[45] See New York Times, 376 U.S. at 279-80, 84 S.Ct. 710; Posadas, 109 Nev. at 454, 851 P.2d at 443 (citing Nevada Ind. Broadcasting, 99 Nev. at 414, 664 P.2d at 344).
[46] Posadas, 109 Nev. at 454, 851 P.2d at 443.
[47] Id. This rule is distinguished from the rule regarding assertions of fact versus assertions of opinion. See Nevada Ind. Broadcasting, 99 Nev. at 410, 664 P.2d at 341-42. Generally, only assertions of fact, not opinion, can be defamatory. Specifically, the rule for distinguishing an opinion from an assertion of fact is "whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact." Id. at 410, 664 P.2d at 342.
[48] Posadas, 109 Nev. at 454, 851 P.2d at 443 (citing Nevada Ind. Broadcasting, 99 Nev. at 415, 664 P.2d at 344).
[49] Id.; see also 1 Robert D. Sack, Sack on Defamation: Libel, Slander, and Related Problems § 5.5.1 (3d ed.2002).
[50] See Posadas, 109 Nev. at 454, 851 P.2d at 443.
[51] See Greer, 448 N.E.2d at 162-63.
[52] Gertz, 418 U.S. at 332, 94 S.Ct. 2997; New York Times, 376 U.S. at 287, 84 S.Ct. 710.