135 Nev., Advance Opinion 59

IN THE SUPREME COURT OF THE STATE OF NEVADA

JACKY ROSEN, AN INDIVIDUAL; AND
ROSEN FOR NEVADA, A 527
ORGANIZATION,
Appellants,
vs.
DANNY TARKANIAN,
Respondent.

No. 73274



FILED

DEC 12 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying an anti-SLAPP special motion to dismiss in a tort action. Eighth Judicial District Court, Clark County; Jerry A. Wiese, Judge.

*Reversed and remanded with instructions.*

Perkins Coie LLP and Marc E. Elias, Elisabeth C. Frost, and Amanda R. Callais, Washington, D.C.; Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, and Bradley Schrager and Daniel Bravo, Las Vegas,
for Appellants.

Randazza Legal Group, PLLC, and Marc J. Randazza and Alex J. Shepard, Las Vegas,
for Respondent.

19-50403

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, HARDESTY, J.:

In this appeal, we consider the appropriate test for determining if protected communications are made in "good faith" under Nevada's anti-SLAPP statutes. At issue in this case are allegedly defamatory statements made by appellant Jacky Rosen during her political campaign against respondent Danny Tarkanian. After being sued for defamation by Tarkanian, Rosen filed a special motion to dismiss the action under the anti-SLAPP statutes, which require her to demonstrate that the protected statements were made in good faith—that is, that they were true or made without knowledge of any falsehood. We hold that, in determining whether the communications were made in good faith, the court must consider the "gist or sting" of the communications as a whole, rather than parsing individual words in the communications. We further conclude that Rosen showed by a preponderance of the evidence that she made the statements in good faith under the first prong of the anti-SLAPP analysis, and Tarkanian cannot demonstrate with prima facie evidence a probability of prevailing on this claim under the second prong. Therefore, we conclude

---

[1]The Honorable Elissa F. Cadish, Justice, and the Honorable Abbi Silver, Justice, did not participate in the decision of this matter. The Honorable Barry Breslow, Judge of the Second Judicial District Court, was designated by the Governor to sit in place of the Honorable Elissa F. Cadish, Justice, and the Honorable Thomas L. Stockard, Judge of the Tenth Judicial District Court, was designated by the Governor to sit in place of the Honorable Abbi Silver, Justice. Nev. Const. art. 6, § 4.

that the district court erred in denying Rosen's special motion to dismiss and remand to the district court to grant the motion.

## FACTS

Danny Tarkanian ran against Jacky Rosen to represent Nevada in the United States House of Representatives in 2016. During the race, Rosen uploaded an ad entitled "Integrity" to YouTube and other social media platforms. This ad makes up the crux of the dispute before us. In the ad, Rosen and Rosen for Nevada (collectively, Rosen) make three statements. First, Rosen claims that "Danny Tarkanian set up 13 fake charities that preyed on vulnerable seniors." Second, Rosen states that "seniors lost millions from the scams Danny Tarkanian helped set up." Third, Rosen states that the charities Tarkanian set up were "fronts for telemarketing schemes." The first two statements cite to articles published in the *Las Vegas Review-Journal*, and the third directly quotes from a *Las Vegas Sun* article.

After Rosen began running this ad, Danny Tarkanian sent her a cease and desist letter, in which he explained that the statements in the ad were found to be defamatory in a prior court case. The case Tarkanian referenced arose out of Tarkanian's earlier race against State Senator Mike Schneider for a seat in the Nevada State Senate. During that race, Schneider said on a television show that Tarkanian "set up 19 fraudulent corporations for telemarketers." Later, Schneider sent out mailers that asked: (1) "Why [d]id Danny Tarkanian betray the most vulnerable among the elderly?" and (2) "Why did [Tarkanian] set up an organization to cheat us out [of] over $2 million of our hard-earned retirement money?" Tarkanian filed suit against Schneider, which culminated in a jury verdict finding that the statements constituted slander and libel per se. Schneider and Tarkanian settled after the jury verdict was entered.

 

Upon receiving the cease and desist letter, Rosen continued publishing the ad online. After the election was over, Tarkanian filed a complaint in district court against Rosen, alleging libel per se, slander per se, and intentional infliction of emotional distress. Shortly thereafter, Rosen filed an anti-SLAPP special motion to dismiss in accordance with NRS 41.660. In her anti-SLAPP motion, Rosen asserted that she believed that the statements were true based on multiple public accounts and Tarkanian's own admissions about his involvement with the corporations. The district court denied the motion, determining that Rosen did not meet her burden under the first prong of the anti-SLAPP analysis, as she did not show that the statements in the ad were made in good faith. The court noted that some of Rosen's statements were similar to those made by Schneider, which were adjudicated as defamatory, but also found that Rosen's statements relied upon statements made by Steven Horsford and Ross Miller in their campaigns subsequent to the Schneider defamation action, and that those statements by Horsford and Miller were never addressed in a court proceeding. Thus, the district court found that it could not ascertain whether the statements at issue were true at this preliminary stage. The district court also determined that, in any event, Tarkanian met his burden under the second prong by showing prima facie evidence of a probability of success on his defamation case and that it should be up to the jury to determine whether the challenged statements were truthful and whether they were made with actual malice. Rosen now appeals, claiming that the district court erred in its analysis.

## DISCUSSION

*The district court erred in finding that the communications were not made in good faith*

We review the denial of an anti-SLAPP motion de novo. *Coker v. Sassone*, 135 Nev., Adv. Op. 2, 432 P.3d 746, 748-49 (2019). The anti-SLAPP statute immunizes from liability "[a] person who engages in a *good faith* communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.650 (emphasis added). Under the first prong of the anti-SLAPP statute, we evaluate "whether the moving party has established, by a preponderance of the evidence," that he or she made the protected communication in good faith. NRS 41.660(3)(a); *see also Coker*, 135 Nev., Adv. Op. 2, 432 P.3d at 749. Only after the movant has shown that he or she made the protected statement in good faith do we move to prong two and evaluate "whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim." *See* NRS 41.660(3)(b).

Here, the parties agree that the statements were "aimed at procuring any . . . electoral action, result or outcome," which is political speech covered by the anti-SLAPP statute. NRS 41.637(1); *see also, e.g.*, *Collier v Harris*, 192 Cal. Rptr. 3d 31, 39-40 (Ct. App. 2015) ("The character and qualifications of a candidate for public office constitutes a public issue or public interest for purposes of" the anti-SLAPP statute; therefore, the statute "applies to suits involving statements made during political campaigns." (alteration in original) (internal quotation marks omitted)). Since the parties agree that the communications in the ad were protected speech, the dispute in this case centers on whether the communications were made in good faith. A communication is made in good faith when it

SUPREME COURT
OF
NEVADA

(O) 1947A

"is truthful or is made without knowledge of its falsehood." NRS 41.637; *see also Delucchi v. Songer*, 133 Nev. 290, 300, 396 P.3d 826, 833 (2017).

Rosen asserted in her anti-SLAPP motion that she made the statements in good faith, but she did not attach a sworn affidavit to her motion asserting as such. Thus, we must look to the evidence that Rosen provided to determine whether the statements were made in good faith. *Cf. Coker*, 135 Nev., Adv. Op. 2, 432 P.3d at 750 (explaining that when an attached affidavit does not address the issue of contention in the statements, courts look to the evidence the movant provides to show that statements were made in good faith). A determination of good faith requires consideration of all of the evidence submitted by the defendant in support of his or her anti-SLAPP motion.

In support of her special motion to dismiss, Rosen submitted at least nine newspaper articles that reported that Tarkanian incorporated and/or was the registered agent for at least 13 entities that were found to be fraudulent telemarketing schemes that solicited millions of dollars from seniors. Four of these articles included direct admissions from Tarkanian of these facts. Rosen also provided a letter from a former Assistant U.S. Attorney confirming the facts in the articles and two sets of pleadings from court cases demonstrating that individuals in charge of the companies in question were indicted or convicted of fraud.

In addition, Tarkanian admitted in his opposition to the anti-SLAPP motion that substantially identical statements made by his political opponents in two of his earlier campaigns for public office were substantively true. In one, Ross Miller stated that Tarkanian "served as the resident agent and attorney for many fraudulent telemarketing organizations who bilked senior citizens out of millions of dollars." In

SUPREME COURT
OF
NEVADA

(O) 1947A

6

another campaign, Steven Horsford's political ads included two statements—"Tarkanian worked for telemarketing scammers" and Tarkanian "has been involved, as a businessman and lawyer, with at least 13 fraudulent charities."

Rosen argues that while all the ads differ slightly, the gist of all the ads are true and therefore the statements were made in good faith. Tarkanian, on the other hand, contends that individual words in the statements made by Horsford and Miller are sufficiently different from words in Rosen's, such that she cannot rely on those statements as evidence that she believed her own statements to be true. Primarily, Tarkanian appears to take issue with the use of the words "set up" in Rosen's statements to describe Tarkanian's role in the telemarketing organizations, rather than the words "worked for," "served as the resident agent and attorney for," or "has been involved . . . with," as used by Horsford and Miller in their statements. Notably, Tarkanian admits that he served as a resident agent, filed incorporation paperwork, and "provided routine legal work for companies that ended up operating telemarketing scams." But he contends that "set[ting] up" a corporation is different from "work[ing] for" or "serv[ing] as the resident agent and attorney for" a corporation, as it suggests that Tarkanian's role in the companies was more intimately involved. This, however, is a distinction without a difference. It is equally arguable that "work[ing] for" fraudulent telemarketing companies implies a higher degree of involvement than simply incorporating, or "set[ting] up," companies which later became fraudulent.

The fundamental problem in Tarkanian's argument is that it ignores the gist of the statements and instead attempts to parse each individual word in the statements to assess it for its truthfulness. But in a defamation action, "it is not the literal truth of 'each word or detail used in a statement which determines whether or not it is defamatory; rather, the determinative question is whether the "gist or sting" of the statement is true or false.'" *Oracle USA, Inc. v. Rimini St., Inc.*, 6 F. Supp. 3d 1108, 1131 (D. Nev. 2014) (quoting *Ringler Assocs. Inc. v. Md. Cas. Co.*, 96 Cal. Rptr. 2d 136, 150 (Ct. App. 2000)), *clarified*, No. 2:10-CV-00106-LRH-PAL, 2014 WL 5285963 (D. Nev. Oct. 14, 2014); *see also Desert Sun Publ'g Co. v. Superior Court*, 158 Cal. Rptr. 519, 521 (Ct. App. 1979) ("A political publication may not be dissected and judged word for word or phrase by phrase. The entire publication must be examined."). To meet her burden as the defendant in prong one, Rosen must establish only "by a preponderance of the evidence" that the statements were true or made without knowledge of their falsity. NRS 41.660(3)(a). This is a far lower burden of proof than the plaintiff must meet under prong two to prevail on his defamation claims, which require a showing of "actual malice"—i.e., that Rosen made the statements with the "knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 719, 57 P.3d 82, 90 (2002) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). Consequently, the plaintiff's high burden of proof for actual malice indicates a low burden of proof for the defendant to show he or she did not have knowledge of falsity of his or her statements and made them in good faith. And, because the standard for "actual malice" is essentially the same as the test for "good faith" in prong one, only differing in the party with whom the burden of proof lies, it is appropriate to use the inquiry in

SUPREME COURT
OF
NEVADA

(O) 1947A

8

defamation cases for determining the truthfulness of a statement under prong one.

Thus, the relevant inquiry in prong one of the anti-SLAPP analysis is whether a preponderance of the evidence demonstrates that "the gist of the story, or the portion of the story that carries 'the sting' of the [statement], is true." *Pegasus*, 118 Nev. at 715 n.17, 57 P.3d at 88 n.17 (2002) (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991)). Under this standard, it is clear from the evidence in the record that Rosen sufficiently demonstrated that the statements were made in "good faith" under the anti-SLAPP statute because the "gist or sting" of the statements was substantively true. NRS 41.660(3)(a); *Pegasus*, 118 Nev. at 715 n.17, 57 P.3d at 88 n.17; *see also Oracle USA*, 6 F. Supp. 3d at 1131. The gist of Rosen's statements, as well as the statements of Horsford and Miller, is that Tarkanian was involved or associated with companies later found to be telemarketing scams that targeted the elderly. And the evidence in the record, particularly Tarkanian's own admissions affirming Horsford's and Miller's statements, suggests that Rosen's statements were substantively true.

It is even clearer from the evidence that Rosen's statements were not made with knowledge of their falsity. *See* NRS 41.637. Tarkanian's involvement with companies found to be fraudulent telemarketing schemes is present throughout the public discourse, as shown by the expansive number of articles Rosen submitted as evidence. According to Tarkanian, however, because Rosen knew about the Schneider statements and knew that those statements were found to be defamatory by a jury based on two newspaper articles about the litigation, she therefore could not make the statements without knowledge of their falsity. However,

SUPREME COURT
OF
NEVADA

(O) 1947A

9

neither newspaper article about the Schneider litigation contained the specific language of the statements that were the subject of the litigation, and it is not clear what part of the Schneider statements the jury found to be defamatory. For example, one of the articles mentioned that Schneider settled the case, rather than taking it to its final adjudication, and that Schneider believed the verdict would have been overturned on appeal. Additionally, these articles must be weighed against the numerous other articles connecting Tarkanian to telemarketing schemes.

Moreover, Horsford and Miller, who made attacks similar to the Schneider article's statements regarding Tarkanian's work for companies found to be fraudulent telemarketers, did not face lawsuits, as evidenced by further newspaper articles. While Tarkanian is not required to pursue lawsuits against anyone who potentially defamed him, the absence of a suit against Horsford and Miller for defamation supports Rosen's argument that her statements were not made with knowledge of their falsity. In addition, the evidence does not clearly define Tarkanian's role in each of the companies, and thus it is reasonable that Rosen would not have known that stating Tarkanian "set up" rather than "worked for" these companies might be false. When considered in conjunction with the entirety of the public discourse on this topic, the evidence provides a compelling case that Rosen believed her statements to be true.

*The district court erred in finding that Tarkanian met his burden in prong two of proving prima facie evidence of a probability of prevailing on his claims*

Because Rosen satisfied prong one of the anti-SLAPP analysis, we must evaluate prong two to determine whether Tarkanian presented prima facie evidence of a probability of prevailing on the claims. He did not. To prevail on a defamation claim, the plaintiff must show: "(1) a false and

SUPREME COURT
OF
NEVADA

(O) 1947A

10

defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pegasus*, 118 Nev. at 718, 57 P.3d at 90 (alteration in original) (internal quotation marks omitted). Where, as here, the plaintiff is a public figure, the statements must be made with "actual malice." *Id.* at 718-19, 57 P.3d at 90-91.[2] The truth of the statements and actual malice are determinative here.

As discussed above, the gist of Rosen's statements is true, or at the very least her statements were made without actual malice. Tarkanian relies on the same newspaper articles about the Schneider litigation as Rosen did to show that Rosen knew her statements were false or at least acted with reckless disregard toward their truth. However, both articles fail to include the specific language that is the subject of the Schneider litigation. One of the articles refers to the statements as focusing on Tarkanian's "contact with companies involved in telemarketing fraud," while the other states that "he did work for telemarketing firms accused of scamming the elderly." Both of these statements were later admitted by Tarkanian to be true after they were made by Horsford and Miller. The fact that two newspaper articles described the Schneider statements in this way

---

[2]This added hurdle is intended "[t]o promote free criticism of public officials, and avoid any chilling effect from the threat of a defamation action." *Id.* at 718, 57 P.3d at 90. Where political campaign speech is made without knowledge of falsity or actual malice, the First Amendment of the United States Constitution requires dismissal of a defamation suit. This is because the remedy for this type of factually incorrect criticism of a political opponent is not a lawsuit, but competing speech. *See Brown v. Hartlage*, 456 U.S. 45, 61 (1982) ("In a political campaign, a candidate's factual blunder is unlikely to escape the notice of, and correction by, the erring candidate's political opponent.").

shows that there is no material difference in the gist of Schneider's statement and those of Horsford and Miller. Because there is no material difference and Tarkanian later admitted to working for these companies, Rosen's statements are also true.

Even if there is a material difference between stating that Tarkanian "set up" the fraudulent telemarketing corporations and stating that he "worked for" those corporations, Tarkanian cannot prove that Rosen made her statements with reckless disregard for their truth. Neither of the newspaper articles Rosen referenced in the ad contain the specific "set up" language from the Schneider litigation, so the evidence does not support that Rosen knew that language formed the basis of the jury verdict in the Schneider litigation. For these reasons, Tarkanian cannot show a probability of proving actual malice in this case.

## CONCLUSION

We conclude that the district court erred in its analysis of whether Rosen's statements were made in good faith. Because the evidence shows that the "gist or sting" of the statements was substantially true or made without knowledge of their falsehood, Rosen met her burden under the first prong of the anti-SLAPP analysis. We further conclude that the district court erred in finding that Tarkanian showed a probability of

prevailing on his claims, as the evidence demonstrates a lack of actual malice by Rosen. Therefore, we reverse and remand with instructions for the district court to grant the special motion to dismiss.[3]

_____, J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

_____, D.J.
Breslow

_____, D.J.
Stockard

---

[3]Granting the special motion to dismiss will result in the dismissal of the entire complaint, including the claims of intentional infliction of emotional distress, as these were based on Rosen's good faith communications. *See* NRS 41.650.

prevailing on his claims, as the evidence demonstrates a lack of actual malice by Rosen. Therefore, we reverse and remand with instructions for the district court to grant the special motion to dismiss.[3]

_____, J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

_____, D.J.
Breslow

_____, D.J.
Stockard

---

[3]Granting the special motion to dismiss will result in the dismissal of the entire complaint, including the claims of intentional infliction of emotional distress, as these were based on Rosen's good faith communications. *See* NRS 41.650.

prevailing on his claims, as the evidence demonstrates a lack of actual malice by Rosen. Therefore, we reverse and remand with instructions for the district court to grant the special motion to dismiss.[3]

_____, J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

_____, D.J.
Breslow

_~~Stockard~~_____, D.J.
Stockard

---

[3]Granting the special motion to dismiss will result in the dismissal of the entire complaint, including the claims of intentional infliction of emotional distress, as these were based on Rosen's good faith communications. *See* NRS 41.650.

GIBBONS, C.J., with whom PICKERING, J., agrees, dissenting:

The anti-SLAPP statute affords a defendant who is sued for allegedly defamatory political speech the opportunity to challenge the complaint by a motion to dismiss at the outset of the case, despite there being some dispute as to the underlying facts. *See Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003) (internal quotation marks omitted), *superseded by statute on other grounds as stated in Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766 (9th Cir. 2017). In evaluating prong one of the anti-SLAPP analysis, this court considers whether the party made the assertedly protected communication in good faith.[1] NRS 41.660(1). A communication is made in good faith when it "is truthful or is made without knowledge of its falsehood." NRS 41.637; *see also Delucchi v. Songer*, 133 Nev. 290, 300, 396 P.3d 826, 833 (2017). To prevail on prong one at this early stage of the litigation, the moving party must establish by a preponderance of the evidence that he or she made the communication in good faith. NRS 41.660(3)(a); *see also Coker v. Sassone*, 135 Nev., Adv. Op. 2, 432 P.3d 746, 749 (2019). Although the moving party is not required to file an affidavit in support of an anti-SLAPP motion to dismiss under the anti-SLAPP statute, it is necessary to do so when material facts are in dispute and to authenticate exhibits.

Rosen's motion to dismiss did not meet the burden of showing, by a preponderance of the evidence, that she made her statements in good faith. While the majority is correct that Rosen contends she relied on

---

[1]In addition to this consideration, this court must also determine whether the speech is political speech covered by the anti-SLAPP statute. NRS 41.637(1). We do not address this here because both parties concede that the speech in question is covered by the anti-SLAPP statute.

articles containing the Horsford and Miller statements, those statements differ markedly from the statements Rosen made that are in issue in this case. Further, Rosen provided no affidavit for the district court to evaluate her reliance or to authenticate the newspaper articles. Even if we were to conclude, as the majority does, that Rosen relied on these articles, such reliance does not prove that Rosen made the statements underlying the complaint in this case in good faith. Consequently, Rosen cannot demonstrate good faith on the back of Tarkanian's failure to sue Horsford or Miller. Tarkanian did sue Schneider for statements about Tarkanian that more closely resemble those Rosen made. Although the case settled before final judgment, a jury found the Schneider statements to be defamatory.

Tarkanian admitted that he did not sue Horsford or Miller because he believed that their statements had some truth to them, despite having a negative slant. The majority emphasizes this acknowledgment. Putting aside the fact that the acknowledgment concerned different statements and was conditional,[2] Tarkanian's acknowledgment only occurred after Rosen published her statements in the advertisement. Therefore, Rosen could not have relied on the acknowledgment when making her statements and cannot rely on this admission in establishing that she made the statements in good faith. Under the majority's reasoning, if a party does not sue for statements that are similar to a defamatory statement, then that party runs the risk of a court holding that the party admitted to a truthful gist of all similar statements. Thereby, the party

---

[2]Tarkanian admits that the statements are true only insofar as he "served as a resident agent and did some minor legal work for some companies."

may be foreclosed from any defamation suit for any similar statements under the anti-SLAPP statute.

Contrary to the majority's assessment, Rosen's and Schneider's statements differ from the Miller and Horsford statements, on which Rosen relied. The majority attempts to bypass these differences by stating that the "gist" of these statements is the same. Specifically, the majority says that the gist of all these statements "is that Tarkanian was involved or associated with companies later found to be telemarketing scams that targeted the elderly." Majority, *supra*, at 9. This method of putting all related statements together and referring to their "gist" may misdirect a court to consider the truthfulness of similar statements instead of considering the statements actually made.

Rosen stated that "Tarkanian set up 13 fake charities that preyed on vulnerable seniors." This language most closely resembles the Schneider advertisements, which stated that "[Tarkanian] set up 19 fraudulent corporations for telemarketers." Horsford and Miller, on the other hand, said only that Tarkanian "worked for" and "served as the resident agent and an attorney for" these corporations. Providing legal work or working as a resident agent for a corporation that is engaged in illicit activity is different than setting up the illicit activity oneself. An attorney who does legal work or serves as the resident agent of a corporation is not necessarily implicated in the corporation's crimes. For example, an attorney may form a corporation for a client by filing the articles of incorporation. The hypothesis that an attorney who filed articles of incorporation for a corporation that later engages in illicit activity is guilty of such activity is incorrect and unfair. While the majority contends that this distinction is "arguable," I disagree.

Rosen was on notice that Schneider's statements, which are indisputably more similar to those at issue here than Horsford's or Miller's statements, were found to be defamatory by eight citizens serving on jury duty. Rosen also received a cease and desist letter from Tarkanian, explaining that similar statements were found to be defamatory. Given these facts, and with no affidavit from Rosen, the district court did not err in concluding that Rosen had not met her statutory burden of showing, by a preponderance of the evidence, that she made the statements in good faith.

Because Rosen did not meet her burden as to prong one, the analysis should end there. But, even assuming Rosen met her burden under prong one, Tarkanian met his burden under prong two of the anti-SLAPP analysis. Under prong two, the burden shifts to the plaintiff to demonstrate "with prima facie evidence a probability of prevailing on the claim." NRS 41.660(3)(b). To determine whether the prima facie evidence standard is met, we may look to California's anti-SLAPP jurisprudence. NRS 41.665(2). In California, the prima facie evidence standard is a low burden. *See Soukup v. Law Offices of Herbert Hafif*, 139 P.3d 30, 51 (Cal. 2006). To meet this standard, the plaintiff must show that his claims meet "a minimum level of legal sufficiency and triability." *Linder v. Thrifty Oil Co.*, 2 P.3d 27, 33 n.5 (Cal. 2000). In essence, the plaintiff "must demonstrate that his claim is legally sufficient." *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 137 Cal. Rptr. 3d 455, 470 (Ct. App. 2012). California courts, therefore, treat this prong as they do a motion for summary judgment: the courts accept as true all evidence that is favorable to the nonmoving party and evaluate the moving party's evidence only to determine if it defeats the defamation claim "as a matter of law." *Id.* at 469-70; *cf. Wood v. Safeway,*

Supreme Court
OF
Nevada

(O) 1947A

4

*Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) ("This court has noted that when reviewing a motion for summary judgment, the evidence, and any reasonable inferences drawn from it, must be viewed in a light most favorable to the nonmoving party.").

Without considering this standard, the majority skips directly to its own defamation analysis and determines whether Tarkanian's claim is factually sufficient instead of legally sufficient. The majority holds that Tarkanian cannot show actual malice because the gist of Rosen's statements is true and Tarkanian acknowledged that the Horsford/Miller statements had some truth to them. Tarkanian maintained throughout the case in district court and before this court that the statements Rosen made in the advertisement, like the Schneider statements, were false, and he has provided support for his assertion.

"Actual malice (or more appropriately, constitutional malice) is defined as knowledge of the falsity of the statement or a reckless disregard for the truth." *Nev. Indep. Broad. Corp. v. Allen*, 99 Nev. 404, 414, 664 P.2d 337, 344 (1983) (emphasis omitted). A person shows "[r]eckless disregard for the truth" when the person has "a high degree of awareness of [the] probable falsity [of the statement]." *Id.* (second and third alteration in original) (internal quotation marks omitted) (citing *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)). Looking to the evidence that Tarkanian presented to show actual malice, it is clear that he made the prima facie showing of a legally sufficient, triable claim. Tarkanian presented evidence that substantially similar Schneider statements were submitted by another district court to a jury of eight citizens and found to be defamatory. The cease and desist letter Tarkanian sent Rosen advised her of these facts. Thus, Rosen had actual notice of the likelihood that her statements were

SUPREME COURT
OF
NEVADA

(O) 1947A

5

actionably false. Moreover, Tarkanian explained that Rosen inaccurately cited to articles to bolster her advertisement even though those articles did not state the propositions she included in her advertisement.

The majority contends that Tarkanian cannot show actual malice because of evidence Rosen presented: the evidence of his admission to the Horsford and Miller statements, and the articles that Rosen claimed she relied on. But consideration of this evidence in prong two of the anti-SLAPP analysis is inappropriate. Rather, we must consider the moving party's evidence only if it defeats the nonmoving party's claims as a matter of law. Rosen's alleged reliance on other articles was not supported by an affidavit. The fact that Tarkanian did not sue Horsford and Miller for their similar statements may make actual malice less probable. However, it does not defeat Tarkanian's claim as a matter of law. NRS 41.660(4) states that "the court shall allow limited discovery" when a party needs to access information held by the opposing party for the purpose of either meeting or opposing the burden under the second prong of the anti-SLAPP statute. Neither Rosen nor Tarkanian requested such discovery in this case. Absent an affidavit from Rosen, the district court correctly determined that Tarkanian's evidence, when taken as true and viewed in a light most favorable to his case, resulted in Tarkanian meeting the burden of the prima facie evidence standard under prong two of the anti-SLAPP analysis.

We believe that the remedy for "factually incorrect criticism [during a campaign] is not a lawsuit, but competing speech." Majority, *supra*, at 11 n.2. As Justice Oliver Wendell Holmes, Jr., wrote, "the best test of truth is the power of the thought to get itself accepted in the competition of the market." *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting). Yet the anti-SLAPP statute fits a specific

purpose—to bar frivolous litigation designed to thwart free speech at the courthouse doors. Without a supporting affidavit, Rosen failed to demonstrate by a preponderance of the evidence that she made the statements in good faith. Even if she had met her burden, considering Tarkanian's evidence in a light most favorable to him, he made a prima facie showing of his claims. The district court underwent the appropriate consideration of Rosen's anti-SLAPP motion and properly denied it based upon the disputed material issues of fact and the limited record.

_____, C.J.
Gibbons

I concur:

_____, J.
Pickering