**136 Nev., Advance Opinion 9**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| JENNIFER V. ABRAMS; AND THE ABRAMS & MAYO LAW FIRM, Appellants, vs. STEVE W. SANSON; AND VETERANS IN POLITICS INTERNATIONAL, INC., Respondents. | No. 73838 **FILED** MAR 05 2020 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY _____ CHIEF DEPUTY CLERK |
| JENNIFER V. ABRAMS; AND THE ABRAMS & MAYO LAW FIRM, Appellants, vs. LOUIS C. SCHNEIDER; AND LAW OFFICES OF LOUIS C. SCHNEIDER, LLC, Respondents. | No. 75834 |

Consolidated appeals from district court orders granting special motions to dismiss in a tort action. Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge.

*Affirmed in part, reversed in part, and remanded.*

Willick Law Group and Marshal S. Willick, Las Vegas,
for Appellants.

McLetchie Law and Margaret A. McLetchie and Alina M. Shell, Las Vegas,
for Respondents Steve W. Sanson and Veterans in Politics International, Inc.

Joseph W. Houston, Las Vegas,
for Respondents Louis C. Schneider and Law Offices of Louis C. Schneider, LLC.

20-08769

BEFORE GIBBONS, HARDESTY and STIGLICH, JJ.

## OPINION

By the Court, STIGLICH, J.:

Nevada's anti-SLAPP statutes allow defendants to file a special motion to dismiss lawsuits initiated to chill free speech. In this appeal, we consider whether statements sent to a listserv of email subscribers criticizing an attorney's courtroom conduct and practices are protected as good-faith communications under Nevada's anti-SLAPP statutes. At issue are respondent Steve Sanson's allegedly defamatory statements regarding appellant Jennifer Abrams' conduct at and following a family court proceeding against opposing counsel, respondent Louis Schneider. We hold that such statements are protected and conclude that Sanson showed by a preponderance of the evidence that his statements were good-faith communications in furtherance of the right to free speech regarding a matter of public concern, except for his private telephone statements made to nonparty David Schoen. We further conclude that Abrams did not demonstrate with prima facie evidence a probability of prevailing on her claims. Therefore, we affirm in part and reverse in part the district court's orders granting Sanson's and Schneider's special motions to dismiss.

## FACTS

Jennifer Abrams and Louis Schneider were opposing counsel in a family law case. Schneider allegedly gave a video of a closed-court hearing in that case to Steve Sanson, president of Veterans in Politics International, Inc. (VIPI). Sanson then published a series of articles on VIPI's website concerning the judiciary and Abrams' courtroom conduct and practices. The

articles were also sent to VIPI's email subscribers and published through various social media outlets.

The first article, "Nevada Attorney attacks a Clark County Family Court Judge in Open Court," included the full video of the court hearing that involved an exchange between Abrams and Judge Jennifer L. Elliott. The article also included quotations from the hearing, such as Judge Elliott noting "undue influence" and "[t]here are enough ethical problems[,] don't add to the problem." Sanson stated that "[i]f there is an ethical problem or the law has been broken by an attorney the judge is mandated by law to report it to the Nevada State Bar," that there are "no boundaries in our courtroom," and that Abrams "crosse[d] the line."

The second article, "District Court Judge Bullied by Family Attorney Jennifer Abrams," republished the video of the hearing after Sanson temporarily removed it following an order issued by Judge Elliott. The article reported on what had taken place and stated that Abrams "bullied" Judge Elliott, that her behavior was "disrespectful and obstructionist" as well as "embarrassing," and that obtaining Judge Elliott's order appeared to be an "attempt by Abrams to hide her behavior from the rest of the legal community and the public."

In the third article, "Law Frowns on Nevada Attorney Jennifer Abrams' 'Seal-Happy' Practices," Sanson criticized Abrams' practice of moving to seal records in her cases. Sanson stated that Abrams "appears" to be "seal happy"; seals her cases in contravention to "openness and transparency"; "appears" to have "sealed [cases] to protect her own reputation, rather than to serve a compelling client privacy or safety interest"; engages in "judicial browbeating"; is an "over-zealous, disrespectful lawyer[ ] who obstruct[s] the judicial process"; and has

obtained an "overbroad, unsubstantiated order" that is "specifically disallowed by law."

The fourth article, "Lawyers acting badly in a Clark County Family Court," included a link to a similarly titled video on YouTube of a court hearing involving Abrams. Sanson stated that Abrams was "acting badly."

The fifth article, "Clark County Family Court Judge willfully deceives a young child from the bench and it is on the record," included a link to the "Seal-Happy" article about Abrams as an "unrelated story" of "how Judges and Lawyers seal cases to cover their own bad behaviors." The article in general criticized Judge Rena Hughes for misleading an unrepresented child in family court. Sanson later posted three videos on YouTube depicting the Abrams & Mayo Law Firm's representation of a client in another divorce action.

In a subsequent telephone conversation initiated by David J. Schoen, an employee of the Abrams & Mayo Law Firm, during which Schoen asked Sanson to remove the videos or blur his face, Sanson allegedly made several unflattering comments about Abrams. These statements allegedly included "words to [the] effect" that Abrams was "unethical and a criminal," that Abrams "doesn't follow the law," that Abrams was "breaking the law by sealing her cases," and that Abrams "started this war."

Abrams and the Abrams & Mayo Law Firm (hereinafter collectively, Abrams) subsequently filed a complaint against Sanson and VIPI (hereinafter collectively, Sanson), and against Schneider and the Law Offices of Louis C. Schneider, LLC (hereinafter collectively, Schneider) based on these articles and statements, alleging defamation, intentional

infliction of emotional distress, negligent infliction of emotional distress, false light, business disparagement, civil conspiracy, and concert of action.[1]

Sanson and Schneider filed separate anti-SLAPP special motions to dismiss pursuant to NRS 41.660. The district court granted Sanson's special motion to dismiss, finding that he met his initial burden because (1) the statements concerned issues of public concern relating to an attorney or professional's performance of a job or the public's interests in observing justice; (2) the statements were made in a public forum on a publicly accessible website, and republishing them by email did not remove them from a public forum; and (3) the statements were either true or statements of opinion incapable of being false. The district court further found that Abrams failed to meet her burden to provide prima facie evidence of a probability of prevailing on her claims. The district court thereafter granted Schneider's special motion to dismiss, finding that Schneider did not directly make any of the statements at issue but was being held liable for statements made by Sanson, which were protected. Abrams appeals.

## DISCUSSION

We review a district court's grant or denial of an anti-SLAPP motion to dismiss de novo. *Coker v. Sassone*, 135 Nev. 8, 15, 432 P.3d 746, 751 (2019). A special motion to dismiss under Nevada's anti-SLAPP statute should be granted where the defendant shows by a preponderance of the evidence that the claim is based upon a good-faith communication in furtherance of the right to petition or the right to free speech regarding a matter of public concern, NRS 41.600(3)(a), and the plaintiff cannot show with "prima facie evidence a probability of prevailing on the claim," NRS

---

[1]Abrams' RICO, copyright infringement, harassment, and injunctive relief claims were voluntarily dismissed and are not at issue.

41.660(3)(b). *Shapiro v. Welt*, 133 Nev. 35, 37, 389 P.3d 262, 267 (2017). A good-faith communication in furtherance of the right to free speech regarding a matter of public concern includes any communication that is (1) "made in direct connection with an issue of public interest," (2) "in a place open to the public or in a public forum," and (3) "which is truthful or is made without knowledge of its falsehood." NRS 41.637(4).

*Statements about an attorney's courtroom conduct and practice of sealing cases directly connect to an issue of public interest*

Abrams first argues that the statements at issue are not protected under Nevada's anti-SLAPP statutes because they are not directly connected with an issue of public interest. We disagree.

In *Shapiro v. Welt*, we adopted California's guiding principles in determining whether an issue is of public interest:

> (1) "public interest" does not equate with mere curiosity;

> (2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest;

> (3) there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient;

> (4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and

> (5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

133 Nev. at 39-40, 389 P.3d at 268 (quoting *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 968 (N.D. Cal. 2013)). We also previously noted that public interest is "broadly" defined. *Coker*, 135 Nev. at 14, 432 P.3d at 751. Applying these principles, we hold that the statements at issue directly connect to an issue of public interest.

Sanson's statements depict and criticize Abrams' behavior in court and towards Judge Elliott, which directly connects to the public's interest in an attorney's courtroom conduct. The public has an interest in an attorney's courtroom conduct that is not mere curiosity, as it serves as a warning to both potential and current clients looking to hire or retain the lawyer. *See, e.g., Choyce v. SF Bay Area Indep. Media Ctr.*, No. 13-CV-01842-JST, 2013 WL 6234628, at *8 (N.D. Cal. Dec. 2, 2013) (finding that statements that an attorney had embezzled funds from clients would concern potential clients for reasons "beyond mere curiosity"); *Piping Rock*, 946 F. Supp. 2d at 966, 969 (finding statements alleging "dishonest, fraudulent, and potentially criminal business practices" addressed matters of public interest because they served to warn consumers to not do business with the plaintiffs); *Davis v. Avvo, Inc.*, No. C11-1571RSM, 2012 WL 1067640, at *3 (W.D. Wash. Mar. 28, 2012) (finding that a website allowing consumers to provide reviews of individual doctors or lawyers related to public participation, because it could "be helpful to [the general public] in choosing a doctor, dentist, or lawyer"); *Wilbanks v. Wolk*, 17 Cal. Rptr. 3d 497, 508 (Ct. App. 2004) (concluding that statements warning consumers not to use plaintiffs' brokerage services were directly connected to an issue of public concern).

We reject Abrams' arguments that the manner in which an attorney represents clients in family law matters is not of public interest and only impacts a small, specific audience. An attorney's behavior, especially toward judges and in judicial proceedings, implicates "[t]he operations of the courts" and is a "matter of utmost public concern." *See Del Papa v. Steffen*, 112 Nev. 369, 374, 915 P.2d 245, 249 (1996) (internal quotation marks omitted). Abrams' contention that the conduct of family court proceedings does not concern the general public is mistaken. Sanson's statements criticizing Abrams for allegedly acting badly in court and misbehaving towards a judge concern the public interest in attorney courtroom conduct. The statements also focus on her courtroom behavior rather than on a private controversy and rely on publicly available information rather than on private information. We therefore hold that Sanson's statements made about Abrams' courtroom conduct are "in direct connection with an issue of public interest" for purposes of Nevada's anti-SLAPP statutes.

Sanson's statements also criticize Abrams' practice of moving to seal cases. They express the opinion that Abrams' desire to seal cases is in contravention of law and antithetical to openness and transparency. Matters of judicial transparency go beyond mere curiosity. We have held "that Nevada citizens have a right to know what transpires in public and official legal proceedings." *Adelson v. Harris*, 133 Nev. 512, 515, 402 P.3d 665, 667 (2017) (quoting *Lubin v. Kunin*, 117 Nev. 107, 114, 17 P.3d 422, 427 (2001)); *see also Stephens Media, LLC v. Eighth Judicial Dist. Court*, 125 Nev. 849, 860, 221 P.3d 1240, 1248 (2009) ("Public access inherently promotes public scrutiny of the judicial process, which enhances both the fairness of criminal proceedings and the public confidence in the criminal

justice system."). Statements about judicial transparency also concern a substantial number of taxpayers who fund the court, all residents affected by judicial rulings, and individuals who participate in the judicial process. Sanson's statements criticizing Abrams for asking to seal cases and obtaining Judge Elliott's prohibition order relate to the public interest in judicial transparency and concern Abrams' public conduct rather than private matters. Sanson's statements are therefore "in direct connection with an issue of public interest" and satisfy the first element of protected good-faith communications.

*An email listserv may constitute a public forum*

Abrams next argues that Sanson's statements were not made in a public forum. While the parties do not dispute that the internet is a public forum, Abrams argues that because Sanson simultaneously transmitted the communications via email to VIPI's subscribers, the anti-SLAPP motions should have been denied. She contends that sending articles to private email addresses does not constitute a communication in a public forum, and that republishing the communications by email took the communications out of the ambit of a public forum. We think otherwise.

To enjoy the protection of Nevada's anti-SLAPP statutes, statements must be communicated "in a place open to the public or in a public forum." NRS 41.637(4); *Shapiro*, 133 Nev. at 39, 389 P.3d at 268. Unlike a single email exchange between two private parties or a communication sent to a small number of people in a private email chain, the communications at issue here were sent to about 50,000 subscribers in a modern manner akin to a radio or television broadcast or newsletter. *See, e.g., Am. Broadcasting Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431, 448 (2014) (holding that individual subscribers who received transmissions constituted "the public" when the same contemporaneously perceptible images and

sounds were communicated to them as a large group of people); *Damon v. Ocean Hills Journalism Club*, 102 Cal. Rptr. 2d 205, 210-11 (Ct. App. 2000) (finding that a newsletter distributed to 3000 recipients constituted a public forum, because it was a "vehicle for communicating a message about public matters to a large and interested community"). Emails sent to a listserv of subscribers likewise provide a medium through which public matters are disseminated. The mere fact that emails reach a person's private inbox does not take the communication out of the ambit of a public forum, especially when the communications are also posted on the internet. We hold that an email listserv may constitute a public forum for purposes of the anti-SLAPP statutes and that emails to the listserv here were communicated in a public forum, satisfying the second element of a protected good-faith communication.

*A private telephone conversation does not constitute a public forum*

Part of Abrams' claims arise from statements Sanson made to Schoen during a private telephone conversation. We conclude that those statements do not fall within the scope of the anti-SLAPP statutes. Statements made in a private telephone conversation between two people are not statements made "in a place open to the public or in a public forum." *See Lane v. Allstate Ins. Co.*, 114 Nev. 1176, 1179, 969 P.2d 938, 940 (1998) (recognizing the private nature of telephone conversations). The district court therefore erred in finding Sanson's telephone statements protected.[2]

---

[2]Sanson and Schneider have pending motions to dismiss under NRCP 12(b)(5). Those motions would be the proper avenue to determine whether claims based on the telephone statements should be dismissed for reasons apart from the protection afforded by the anti-SLAPP statute, including whether making statements to an employee of the plaintiff law firm

Supreme Court
of
Nevada

(O) 1947A

10

Because we hold that those statements are not protected, we need not include them in the rest of our analysis, and accordingly our references to Sanson's statements throughout do not include those made during the telephone call.

*Sanson's statements were either truthful or statements of opinion incapable of being false*

Finally, to be protected under the anti-SLAPP statutes, Sanson had to show that his statements were "good-faith" communications—that is, that the statements were either "truthful or made without knowledge of [their] falsehood." NRS 41.637; *see also Shapiro*, 133 Nev. at 39, 389 P.3d at 267-68. Because "there is no such thing as a false idea," *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 714, 57 P.3d 82, 87 (2002) (internal quotation marks omitted), statements of opinion are statements made without knowledge of their falsehood under Nevada's anti-SLAPP statutes. The district court concluded that Sanson's statements were either true or opinions. We agree.

Some of the statements at issue involve videos of courtroom proceedings. These statements are true, as they involve visual recordings of actual court proceedings. *See, e.g., PETA v. Bobby Berosini, Ltd.*, 111 Nev. 615, 619, 895 P.2d. 1269, 1272 (1995) (noting that a videotape at issue was not "false" because it was an accurate portrayal of what had happened), *overruled on other grounds by City of Las Vegas Downtown Redev. Agency v. Hecht*, 113 Nev. 644, 650, 940 P.2d 134, 138 (1997). Sanson's statements

---

constituted "publication to a third person," as required for a defamation claim, *see Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 718, 57 P.3d 82, 90 (2002) (internal quotation marks omitted), and whether the statements are not actionable because Schoen initiated the call, *see* Restatement (Second) of Torts § 577, cmt. e (Am. Law Inst. 1977).

in the first article that selectively quote from a court proceeding are also protected because he includes the full court video in the same article, thereby allowing average readers to evaluate the veracity of the statements based on their source. *See, e.g.*, *Adelson*, 133 Nev. at 517, 402 P.3d at 669 (noting that a hyperlink included next to an allegedly defamatory statement serves as a "footnote for purposes of attribution in defamation law" and "permits the reader to verify an electronic article's claims" (internal quotation marks omitted)).

A majority of the statements at issue, however, involve Sanson's opinions, which, as opinions, are not knowingly false. They involve Sanson's personal views and criticisms of Abrams' courtroom behavior, especially towards judges and in seeking to seal cases. As opinions about public matters stated in public fora, they constitute good-faith communications under Nevada's anti-SLAPP statutes.

Abrams' argument that some statements are false assertions of fact that impute malfeasance, such as calling Abrams an "obstructionist," does not show that the statements lose anti-SLAPP protection, because our analysis does not single out individual words in Sanson's statements. In *Rosen v. Tarkanian*, we held that "in determining whether the communications were made in good faith, the court must consider the 'gist or sting' of the communications as a whole, rather than parsing individual words in the communications." 135 Nev., Adv. Op. 59, 453 P.3d 1220, 1222 (2019). In other words, the relevant inquiry is "whether a preponderance of the evidence demonstrates that the gist of the story, or the portion of the story that carries the sting of the [statement], is true," and not on the "literal truth of each word or detail used in a statement." *Id.* at 1224 (alteration in original) (internal quotation marks omitted). Furthermore, in determining

good faith, we consider "all of the evidence submitted by the defendant in support of his or her anti-SLAPP motion." *Id.* at 1223. Here, the "gist and sting" of the communications—as demonstrated by Sanson's declaration, emails to Judge Elliott and Abrams, and articles—are that Sanson believes Abrams misbehaves in court and employs tactics that hinder public access to courts. These constitute Sanson's opinions that, as mentioned above, are not knowingly false and thus satisfy the third element of protected good-faith communications.

We therefore determine that Sanson showed that his statements were either truthful or made without knowledge of their falsity. As Sanson also showed that his statements concerned matters of public concern and were made in a public forum, we conclude that he met his burden under the first prong of the anti-SLAPP analysis.

*Abrams did not prove with prima facie evidence a probability of prevailing on her claims*

Because Sanson satisfied prong one of the anti-SLAPP analysis, we must evaluate Abrams' showing under prong two: whether her claims had minimal merit.[3] *See* NRS 41.665(2) (stating that a plaintiff's burden under prong two is the same as a plaintiff's burden under California's anti-SLAPP law); *Navellier v. Sletten*, 52 P.3d 703, 712-13 (Cal. 2002) (establishing the "minimal merit" burden for a plaintiff). In assessing whether Abrams' claims arising from protected communications have minimal merit, we must review each challenged claim independently and

---

[3]We need not review the likelihood of prevailing on the claims based on the Schoen statements because those statements do not satisfy the first prong and are not protected.

assess Abrams' probability of prevailing.[4] *See Baral v. Schnitt*, 376 P.3d 604, 613-14 (Cal. 2016). A complaint should not be dismissed in its entirety where it contains claims arising from both protected and unprotected communications. *See id.* This analysis serves to ensure that the anti-SLAPP statutes protect against frivolous lawsuits designed to impede protected public activities without striking legally sufficient claims. *See Navellier*, 52 P.3d at 711.

Reviewing Abrams' probability of prevailing on each of her claims arising from protected good-faith communications, we conclude that she has not shown minimal merit. Abrams' defamation claim lacked minimal merit because Sanson's statements were opinions that therefore could not be defamatory. *See Pegasus*, 118 Nev. at 715, 718, 57 P.3d at 88, 90 (excluding statements of opinion from defamation). Abrams did not show that her intentional infliction of emotional distress (IIED) claim had minimal merit because she did not show extreme and outrageous conduct beyond the bounds of decency. *See Olivero v. Lowe*, 116 Nev. 395, 398, 995 P.2d 1023, 1025 (2000) (stating IIED claim elements); *Maduike v. Agency*

---

[4]We take this opportunity to clarify our disposition in *Rosen* where we summarily directed the complaint to be dismissed in its entirety. *See* 135 Nev., Adv. Op. 59, 453 P.3d at 1226 n.3. All of the claims in that case arose from protected good-faith communications and were not supported by a prima facie probability of prevailing. In assessing the merits of a special motion to dismiss pursuant to NRS 41.660, each challenged claim should be reviewed independently. *See Baral v. Schnitt*, 376 P.3d 604, 616 (Cal. 2016) (providing that the review should focus on the particular allegations, their basis in protected communications, and their probability of prevailing, rather than the form of the complaint); *see also Okorie v. L.A. Unified Sch. Dist.*, 222 Cal. Rptr. 3d 475, 487, 493-96 (Ct. App. 2017) (observing that the motion to dismiss may challenge specific portions or the entirety of a complaint and proceeding to review the merits of each challenged claim).

*Rent-A-Car*, 114 Nev. 1, 4, 953 P.2d 24, 26 (1998) (considering "extreme and outrageous conduct" as that which is beyond the bounds of decency). Sanson's use of a vitriolic tone was insufficient to support such a claim. *See Candelore v. Clark Cty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992) (considering claim for IIED under Nevada law and observing that "[l]iability for emotional distress will not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities'" (quoting Restatement (Second) of Torts § 46 cmt. d (1965))). As Abrams' IIED claim lacked minimal merit and she did not demonstrate negligence, her claim for negligent infliction of emotional distress also lacked minimal merit. *See Shoen v. Amerco, Inc.*, 111 Nev. 735, 748, 896 P.2d 469, 477 (1995) (allowing for negligent infliction of emotional distress if the acts arising under intentional infliction of emotional distress were committed negligently). Abrams did not show minimal merit supporting her claim for false light invasion of privacy because she failed to show that she was placed in a false light that was highly offensive or that Sanson's statements were made with knowledge or disregard to their falsity. *See* Restatement (Second) of Torts § 652E (1977).[5] Abrams did not show minimal merit supporting her business disparagement claim because she did not show that Sanson's statements were false or provide evidence of economic loss that was attributable to the disparaging remarks. *See Clark Cty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 385-87, 213 P.3d 496, 504-05 (2009)

---

[5]In light of the United States Supreme Court's reversal in *Franchise Tax Board of California v. Hyatt*, ___ U.S. ___, 139 S. Ct. 1485 (2019), we reassert our recognition of the cause of action for the false light invasion of privacy as set forth in the Restatement. *Cf. Franchise Tax Bd. of Cal. v. Hyatt*, 133 Nev. 826, 844-46, 407 P.3d 717, 735-36 (2017), *rev'd*, ___ U.S. ___, 139 S. Ct. 1485 (2019).



(stating the elements for business disparagement and explaining that the claim requires economic loss caused by injurious falsehoods targeting the plaintiff's business). Abrams did not show minimal merit supporting her claim for civil conspiracy because she did not show an intent to commit an unlawful objective. *See Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 130 Nev. 801, 813, 335 P.3d 190, 198 (2014) (defining civil conspiracy). Lastly, Abrams did not show minimal merit supporting her claim for concert of action because she did not show any tortious act or that Sanson and Schneider agreed to conduct an inherently dangerous activity or an activity that poses a substantial risk of harm to others. *See GES, Inc. v. Corbitt*, 117 Nev. 265, 271, 21 P.3d. 11, 15 (2001). We therefore hold that Abrams failed to meet her burden under the second prong of the anti-SLAPP analysis.

## CONCLUSION

We conclude that the district court correctly determined that Sanson's articles and widely disseminated emails fell within the protections of Nevada's anti-SLAPP statutes. Because Sanson's statements made about an attorney's courtroom conduct and practices directly connect to an issue of public interest, an email listserv may constitute a public forum, and the statements are either true or opinions that cannot be false, Sanson met his burden under the first prong of the anti-SLAPP analysis. We also conclude that the district court did not err in finding Abrams did not demonstrate with prima facie evidence a probability of prevailing on her claims that are based on those statements. However, we conclude that the district court erred as to Sanson's statements to Schoen because private telephone conversations are not statements made in a place open to the

SUPREME COURT
OF
NEVADA

(O) 1947A

16

public or in a public forum. Therefore, we affirm in part,[6] reverse in part, and remand for further proceedings consistent with this opinion.[7]

_____, J.
Stiglich

We concur:

_____, J.
Gibbons

_____, J.
Hardesty

---

[6]Because Abrams seeks to hold Schneider liable solely for Sanson's statements, we also conclude that the district court properly granted Schneider's special motion to dismiss, except as to the telephone statements.

[7]Abrams also argues that the district court should have considered (1) improper motive and (2) whether the statements were false and defamatory *before* applying an anti-SLAPP analysis. She asserts that the district court should have granted limited discovery under NRS 41.660(4) to determine the underlying motives and relationship between Sanson and Schneider. We have considered these arguments and reject them. Our anti-SLAPP statutes have no such preliminary requirement that a district court consider motive, falsity, and defamatory nature. NRS 41.660(4) also conditions discovery "[u]pon a showing by a party that information necessary to meet" the plaintiff's burden "is in the possession of another party or a third party." Because information about the underlying motive and relationship would not have assisted with any of the claims, discovery was not warranted.